79 N.J. Super. 294 (1963)
191 A.2d 483
POWER-MATICS, INC., A NEW YORK CORPORATION AUTHORIZED TO DO BUSINESS IN THIS STATE, PLAINTIFF-APPELLANT,
v.
EDWARD LIGOTTI AND ELIZABETH LIGOTTI, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1963.
Decided May 31, 1963.
*297 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Paul H. Greenberg argued the cause for appellant.
Mr. Irving C. Evers argued the cause for respondents (Messrs. Fornabai and Hogger, attorneys; Mr. Evers, of counsel and on the brief).
*298 The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff appeals from a final judgment of the Superior Court, Law Division. The trial court, sitting without a jury, ruled that plaintiff had not substantially complied with the terms of the contract between the parties for the construction of a porch. The court refused to take testimony concerning rescission of the contract and the reasonable value of the material supplied and labor performed.
The complaint was in two counts. The first alleged that on or about April 2, 1960 defendant entered into a written contract with plaintiff to supply and install "an insulated roof with California [sic] windows and jalousie doors upon their dwelling house at 49 Lexington Avenue, Borough of Emerson, N.J., at an agreed price"; plaintiff fully performed and installed the merchandise in accordance with the terms of the contract; payment had been refused; and judgment was demanded for the balance due on the contract. The second count alleged that in May 1960 plaintiff provided certain goods and services on defendants' "promise to pay the reasonable value of the same." Although plaintiff had fully performed its agreement, defendants refused to pay, "thereby being unjustly enriched for the reasonable value thereof." Each count demanded judgment against defendants jointly and severally for $2,280, interest and costs.
Defendants, by their answer, denied the allegations of the complaint and raised three defenses: the contract was voided by a subsequent agreement signed by plaintiff's president; plaintiff breached its agreement in failing to furnish the material or perform the work required by the terms of the contract and by representations of plaintiff's officers, agents or representatives; and plaintiff breached the agreement because "the work done by the plaintiff was of poor workmanship and of defective quality."
The pretrial order substantially reiterated the allegations of the complaint and answer, noting that plaintiff's first count was "on express contract"; the second, "on implied contract for the reasonable value of such goods and services." *299 The issues were stated to be "express contract, implied contract, unjust enrichment, reasonable value, validity of said contract and of non-performance of terms of said contract, damages."
At the trial, the parties stipulated that plaintiff and defendants had entered into a written contract on April 2, 1960, that the porch had been built and was attached to the house on defendants' property, and that the contract price was $2,300, with a deposit received of $20, leaving a balance due of $2,280.
Dominick DiCenzo, president of plaintiff corporation, testified that the room and roof were prefabricated and installed on defendants' premises in accordance with the contract. When counsel for plaintiff completed examination of DiCenzo on the first count, he stated his intention to offer proof on the second count relating to the reasonable value of the material and work performed. The trial judge ruled that, since plaintiff had offered testimony on the express contract, it could not proceed on the alternative count of reasonable value. Counsel for plaintiff reserved the "right" to offer testimony on rebuttal concerning reasonable value, after defendants had offered their proof.
Defendant Edward Ligotti testified that the porch did not conform with the contract. Soon after the porch was erected, Mr. Ligotti telephoned Mr. DiCenzo to tell him he was not satisfied with its construction. Specifically, defendant testified to the following deficiencies. The corners of the porch were "supposed to be miter closed" together; however, as constructed they
"didn't fit the porch right * * *. It's cut very crude, very raw, and then they fill it with caulking compound, which doesn't hold. * * * The result, you get air, it's not an insulated porch any more. It leaks from all over that way."
Despite the fact that the aluminum joints were "supposed to fit square, * * * practically every one of them" had openings *300 resulting from their "very rough cut and required caulking."
The doors were out of square, were too small by "half inch on both sides," and did not close properly. The hinges were not properly installed, were not countersunk  leaving a "big gap" between the door and the side of the porch. The proper door checks were never installed, with the result that the wind blew the doors open. No "striker plates" were installed, making it impossible to lock the doors. The front door was "one inch short on the bottom. You can stick your hand through it."
The contract called for California windows, but did not specify the thickness of glass to be used. Defendant testified that in a conversation with DiCenzo he was promised "double thick windows" with "double strength glass to withstand the storms and everything." Plaintiff alleges that representations made by its officers may not be introduced into evidence because the contract expressly provided that it "shall constitute the entire agreement between the parties hereto." Plaintiff argues that, as a result of this contract clause, defendants abandoned in the pretrial order the defense based upon representations made by plaintiff's agents. The term "California windows" was not defined in the contract, and evidence from outside the contract was admissible to explain and construe the proper meaning of that phrase. Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 496-7 (App. Div. 1963).
Plaintiff installed only single strength windows with the result that "cold can get through very easily" and the porch was not insulated. Moreover, "out of the 13 windows, full windows, there's about 5 screens that the screens are torn apart when they put the center bar in." In addition, several window moldings, which hold the panes of glass, were missing.
The moldings where the porch joins the house did not fit properly, resulting in "gaps an inch and a half all along the shingles." These openings were only partially filled with caulking compounds, leaving open spaces 3/4" wide. The bolts, *301 which secured the door saddles to the concrete floor, protruded, causing persons to trip as they passed through the doorway.
A provision was to be made in the roof of the porch for a drain pipe which had been attached to the house. "He [plaintiff's workman] was supposed to cut the roof out and come down; but what he did, he got a hammer and knocked it [the drain pipe] over to one side and left it that way."
Mullions in the porch windows were damaged by hammer marks, and the facia plates for the roof were never installed. Weep holes for the drainage of water to the outside were improperly positioned "with the holes on the inside." As a result, when it rains the water comes inside the porch instead of going outside the porch." Finally, the "last section of the roof" was installed in a temporary fashion, with only three screws instead of 15 used in the other five panels.
Although defendants notified plaintiff of these deficiencies, no offer or attempt to remedy the situation was ever made.
On cross-examination, Ligotti was asked by plaintiff's counsel if he had received "an estimate of the cost of the double strength windows as opposed to single strength." Ligotti replied that he "didn't get a written estimate" but had spoken on the telephone to someone from the "glass place." Plaintiff's counsel asked, "[d]o you remember how much the cost was?" When Ligotti began to give an answer which plaintiff's counsel apparently believed was not responsive, he then stated, "That is not what I asked you. I asked you the cost of double strength glass as opposed to single strength glass." The witness expressed his inability to answer the question by a yes or no response and asked permission to "answer it my way." When the court granted this request and Ligotti began to describe the telephone call, plaintiff's counsel objected on the ground that this testimony would be hearsay. The trial judge overruled the objection, noting that the witness was merely answering plaintiff's original question. The witness proceeded to testify that the cost of replacing 44 panes of single strength glass with double strength glass would be approximately $375.
*302 The trial judge properly admitted the testimony. It was responsive to the attorney's question which, of necessity, called for an answer based on hearsay  an answer which counsel insisted that Ligotti give.
DiCenzo was recalled to testify in rebuttal as to the various items that defendant said were not completed or work that was improperly performed. He denied making any representations concerning the proposed thickness of the California windows and stated that single strength glass was ordinarily used on such windows. According to DiCenzo, the cost for replacing the doors would be $140. He testified that most of the mentioned defects, except replacing the present single strength windows with glass of double thickness, could be corrected for under $100. He estimated that two of his workers could make these repairs in seven or eight hours.
At the conclusion of the testimony concerning the first count of the complaint, plaintiff again sought to introduce evidence concerning reasonable value. The court denied this offer of proof and stated: "The law is quite clear that where you are suing on an express contract, you cannot sue on quantum meruit." Plaintiff's counsel continued to argue that reasonable value was an alternative count in the complaint. The trial judge replied, "You cannot have alternative counts, the law is quite clear on it."
In awarding judgment to defendants, the trial judge noted that plaintiff's ground of recovery was based solely upon the express contract. The second count for reasonable value was rejected for reasons given during the course of the trial. The judge was "convinced of the truth of defendant's testimony" and noted "a number of conditions that were complained of, which are material." He stated that he believed defendant's testimony and, consequently, that plaintiff had agreed to supply double strength glass windows. The trial judge emphasized the improper fit of the doors and their component parts. He further noted that "the roof where it met the sides of the house, where there were openings to the joints" and "to many other conditions, which were perhaps minor in nature, but *303 nevertheless existed." He concluded that "taking it all together, it shows conclusively, in my opinion, that there was not substantial compliance with the contract."
Preliminarily, we note that the specifications for the porch were briefly inserted in a standard printed form, were extremely vague, and completely failed to specify the material to be furnished and the manner in which the work was to be performed. As the court succinctly stated in Minemount Realty Co., Inc. v. Ballentine, 111 N.J. Eq. 398, 399 (E. & A. 1932):
"Where a party contracts to build a building for a specified purpose, the law reads into the contract a stipulation that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose."
See R. Krevolin & Co., Inc. v. Brown, 20 N.J. Super. 85, 88 (App. Div. 1952); 17 C.J.S., Contracts, § 329, p. 781 (1939).
The principles for substantial performance were extensively reviewed in Jardine Estates v. Donna Brook Corp., 42 N.J. Super. 332, 337-8 (App. Div. 1956):
"A building contractor is not entitled to recover unless he has substantially complied with the contract, but if he has, he is entitled to recover the contract price, less a fair allowance to the owner for minor defects or omissions."
See 5 Williston, Contracts (3d ed. 1961), § 805, pp. 838 et seq. Before recovery on the contract is permitted, it should be shown that the builder's default was not willful and that the defects were not so serious as to deprive defendant of the intended use of the property.
The weight of the evidence in the instant case demonstrates a willful default and serious defects. It is clear that "[w]here there is conflicting testimony as to whether or not the contractor has substantially performed the contract, the issue is to be determined by the trier of the facts." Jardine Estates v. Donna Brook Corp., supra, 42 N.J. Super., at p. 338. Thus, the questions of the extent of performance, abandonment, *304 and defective work were disputed issues of fact and were properly decided by the trier of the facts, finding as we do substantial support therefor in the evidence. See Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 423-4 (1961). For example, the doors were too small and could not be properly fastened. Bolts protruded from the floor. The single strength glass windows did not provide proper insulation. There were numerous and large openings in the joints and moldings. Water leaked into the porch instead of running outdoors as a result of improperly installed channel moldings. As noted, numerous other deficiencies were testified to by Ligotti which, taken together with the defects already enumerated, convince us that the trial judge properly found that plaintiff did not substantially perform its contract. Damato v. Leone Construction Co., 41 N.J. Super. 366, 371-2 (App. Div. 1956); R. Krevolin & Co., Inc. v. Brown, supra, 20 N.J. Super., at p. 91.
We next consider plaintiff's argument that it should have been permitted to offer proof of reasonable value.
As we have noted, the trial judge refused to accept evidence on the second count and held that an express contract and reasonable value could not be alternatively proved. However, the authorities relied upon by the trial judge in rejecting plaintiff's second count  Moser v. Milner Hotels, Inc., 6 N.J. 278, 280-1 (1951) and C.B. Snyder Realty Co. v. Nat., Inc., Banking Co., 14 N.J. 146, 162-3 (1952)  merely state that there must be a rescission of an express contract before the parties will be permitted to proceed with a claim for quantum meruit. The only conflict between pleading and proving an express contract and quantum meruit simultaneously occurs in the absence of a rescission. Indeed, our early cases which established the principle of substantial performance of building contracts also affirmed the submission of alternative counts to a jury for its consideration of reasonable value, when the owner had accepted the final product. E.g., Feeney v. Bardsley, 66 N.J.L. 239, 240 (E. & A. 1901). As Judge Conford stated in Shapiro v. Solomon, 42 *305 N.J. Super. 377, 385 (App. Div. 1956), express contract and quantum meruit may be alternatively pleaded if the prerequisite rescission has also been pleaded or is unnecessary because the alleged express contract was actually void or did not exist.
In the present case, rescission was neither pleaded nor mentioned in the pretrial order. There was no evidence at the trial which would tend to prove a rescission. The trial judge, therefore, was correct in holding that the express contract and a claim for quantum meruit were mutually exclusive under these circumstances.
However, it must be emphasized that plaintiff sought to proceed on its second count on the basis of implied contract, unjust enrichment, and reasonable value  issues set out in the pretrial order. The trial judge characterized the second count as sounding in quantum meruit. However, it may properly be said to have also included, in broad contemplation and particularly in light of the pretrial order, a claim for recovery on the theory of quasi-contract. Since there must be a retrial, the answer and pretrial order may, in the interest of substantial justice, be amended to make this entirely clear.
A contract implied in fact consists of an obligation "arising from mutual agreement and intent to promise but where the agreement and promise have not been made in words," but are implied from the facts. On the other hand, a constructive or quasi-contract is an obligation created by the law for reasons of justice without regard to expressions of assent by either words or acts. West Caldwell v. Caldwell, 26 N.J. 9, 28-9 (1958). Quasi-contractual obligations rest upon the equitable principles that a person shall not be allowed to enrich himself unjustly at the expense of another and that a man is deemed to have performed that which he ought to do. Therefore, these obligations are sometimes imposed even against a clear expression of dissent. St. Paul Fire, etc., Co. v. Indemnity Ins. Co. of No. America, 32 N.J. 17, 22 (1960); Deskovick v. Porzio, 78 N.J. Super. 82, *306 86-8 (App. Div. 1963); 1 Williston, Contracts (3d ed. 1957), § 3A, pp. 12 et seq.; 1 Corbin, Contracts (1950), § 19, pp. 37 et seq.; 12 Am. Jur., Contracts (1938), § 6, pp. 502 et seq.
Since quasi-contractual obligations arise independently of the parties' intent or the existence of a contract, there is no need to demonstrate the rescission of an express contract which may exist between the parties. The court in Rabinowitz v. Mass. Bonding & Ins. Co., 119 N.J.L. 552, 556 (E. & A. 1938), summarized the law applicable to this case as follows:
"It is a well established rule of law that when a person, with expectation of remuneration, confers benefits of service or property upon another, under such circumstances that it would be unjust and inequitable for the person receiving the benefits to retain them without compensation therefor, the law will raise a quasi contractual obligation to support a recovery for the value of such benefits conferred."
In the instant case, the evidence fails to show any objection by defendants or suggestion of prejudice which might have resulted from proof of the second count for reasonable value.
The fact that plaintiff may have been in willful default does not bar his recovery for reasonable value. 2 Restatement, Contracts, § 357, p. 623, states that:
"Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment * * * for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable portion of the agreed compensation, if * * * (b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious."
See Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 307-8 (App. Div. 1958); 5 Williston, Contracts (rev. ed. 1937), *307 § 1473, p. 4118 and § 1480, p. 4134. Where part performance has been rendered which is more valuable to the defendant than the amount of the injury caused by the breach, it would be inequitable and unjust to allow the injured party to retain the benefit of the part performance so rendered without making compensation for a portion of such value. 5 Corbin, Contracts, supra, § 1122, p. 542.
Applying these principles to the present case, we conclude that plaintiff should have been allowed to offer evidence to establish, if it could, a right to recover the amount of the benefit it conferred upon defendants in excess of the harm it had caused defendants by its own breach  rather than be compelled to suffer a complete forfeiture.
Defendants argue that plaintiff freely elected to proceed on the express contract count and thereby waived the second count. A reading of the testimony fails to substantiate this argument. As already noted, counsel for plaintiff made two offers of proof, but the trial judge insisted that plaintiff proceed solely on the express contract.
Finally, defendants oppose any attempt by plaintiff to establish the amount of the benefit it had conferred in excess of the harm caused on the ground that "no substantial benefits were in fact conferred upon the landowners." However, this argument goes to the merits of the dispute; the question can be resolved only after the taking of proper proofs.
The judgment under review is affirmed as to the first count of the complaint. because there was no substantial performance of the express contract. The judgment is reversed as to the second count; and the cause is remanded for a trial limited to the issue of quasi-contractual recovery in accordance with the rule set out in the quoted text from the Restatement of Contracts, above.