242 N.J. Super. 592 (1990)
577 A.2d 1278
THOMAS CROWE, PLAINTIFF-APPELLANT,
v.
M & M/MARS, A DIVISION OF MARS INCORPORATED, DEFENDANT-THIRD-PARTY PLAINTIFF, RESPONDENT-CROSS-APPELLANT,
v.
SPARTAN DESIGN INCORPORATED, THIRD-PARTY DEFENDANT-CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1990.
Decided July 11, 1990.
*594 Before Judges MICHELS, R.S. COHEN and BROCHIN.
John B. Collins argued the cause for appellant (Bongiovanni & Collins, attorneys).
Denise H. Pappas argued the cause for respondent-cross-appellant (Courter, Kobert, Laufer, Purcell & Cohen, attorneys).
Joseph J. Vanecek argued the cause for cross-respondent.
The opinion of the court was delivered by R.S. COHEN, J.A.D.
If a person is employed to invent for the employer, a resulting invention belongs to the employer. If a person who is employed to perform other functions conceives and develops an invention during working hours with the aid of fellow employees and with the use of the employer's materials and machinery, the invention belongs to the employee but the employer has *595 an irrevocable but non-exclusive right to use it. This is the "shop right" rule. Kinkade v. N.Y. Shipbuilding Corp., 21 N.J. 362, 369, 122 A.2d 360 (1956); United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933), opinion amended in an immaterial respect, 289 U.S. 706, 53 S.Ct. 687, 77 L.Ed. 1462 (1933); 9 Williston on Contracts, § 1016, p 111 (3rd ed. 1967). The issue presented by this case is whether the shop right rule defeats an action to recover in quantum meruit for a manufacturer's use of a device invented by a person who was not employed by the manufacturer but whose employer placed him in the manufacturer's plant on a long-term basis, at the manufacturer's request and expense, to work with employees of the plant to serve its needs. We hold that the shop right rule does apply, and that therefore the Law Division judge properly granted the manufacturer's motion for summary judgment.
In deciding defendant's motion, the Law Division judge accepted, as he had to do, the following facts favoring plaintiff's claim.
Plaintiff Thomas Crowe is a licensed mechanical engineer, employed by third-party defendant, Spartan Design. Spartan had an on-going contractual relationship with defendant M & M/Mars for Spartan to furnish engineering and design personnel from time to time at M & M/Mars's plant as needed to assist in various M & M/Mars engineering projects. The personnel were intended to remain independent contractors or Spartan employees, but not to become employees of M & M/Mars. They were paid by Spartan which billed M & M/Mars, and they had no employment contract with M & M/Mars.
Plaintiff Crowe was at M & M/Mars' plant from February 1, 1983, through June 3, 1985, engaged in various projects having to do with plant maintenance and production machinery. While much of plaintiff's daily work was self-directed, he worked with *596 M & M/Mars personnel and under an M & M/Mars employee, Wayne Najduch.
One of the projects which occupied plaintiff was Project 131. It was a continuous system designed to spray a chocolate coating onto various candies. The Project 131 team included M & M/Mars employees and representatives of Omni Systems, Inc., which had produced components of the chocolate spray system. Plaintiff's first assignment as a member of the Project 131 team was to design a spraying arm compatible with the spray tub into which the candies went to be coated.
Significantly impeding satisfactory production on the chocolate spray system were the continually failing pumps. There were twelve of them, furnished by Omni Systems. They were a constant problem, an object of repeated improvement attempts by the team, and one of plaintiff's functions was to increase the production achieved by the pumps. After a particular team meeting at which the shortcomings of the pumps were a central discussion issue, plaintiff focused his work efforts on improving them, with the approval and under the direction of Wayne Najduch.
Plaintiff conceived of a new pump  not an alteration of the Omni pump, but a new design. His initial idea came to him at home. He went to Najduch and told him he thought he could design a better pump. Najduch told him to submit some drawings for review. Najduch approved the drawings and had plaintiff go to Henry Schwager, an M & M/Mars machinist, to fabricate a prototype. The drawings and fabrication utilized M & M/Mars personnel, materials and machinery, and also plaintiff's time for which it was paying Spartan.
Two prototypes were built and installed in the chocolate spray system. They worked so well that M & M/Mars decided to switch over completely to the newly designed pumps. Omni Systems built the new pumps. As a result of their use, the chocolate spray system is a success.
*597 M & M/Mars does not concede the accuracy of this account. Among other things, it contends that plaintiff was only a member of a team that worked on the problem pump, that plaintiff's work merely contributed with the work of other team members to the modification, and that the new pump was not an invention but rather an improvement of just the sort that plaintiff was there to make.
M & M/Mars, however, concedes plaintiff's version for the purpose of its motion for summary judgment based on the shop right rule. The reason is that plaintiff's sole claim is for quantum meruit recovery for the production use by M & M/Mars of the pump he says he invented. Such a claim is defeated if the shop right rule is applicable, that is, if the invention was conceived and developed during working hours with the aid of the employer's personnel and with the use of the employer's materials and machinery. In that case, the employer has the irrevocable non-exclusive right to use the invention.
It does not matter that the idea may first occur to the inventor at home while pondering the employer's problems, if the remaining conditions are satisfied for application of the shop right rule. If it made a difference, no one would ever have an inventive idea until safely at home. Plaintiff in Kinkade v. N.Y. Shipbuilding Corp. conceived his invention at home. The Supreme Court concluded that that fact was of no moment. 21 N.J. 362, 371, 122 A.2d 360 (1956).
Here every predicate for application of the shop right rule is concededly present, save one. That one is that plaintiff was not, at least not obviously, an M & M/Mars employee. Plaintiff argues the shop right rule therefore does not apply. We disagree.
The rule was developed to counter spurious claims by employees of inventions or novel ideas occurring during the regular course of their work for their employers. Kinkade v. N.Y. Shipbuilding Corp., 21 N.J. 362, 370, 122 A.2d 360 (1956). The United States Supreme Court described the rule as one of *598 equity. In United States v. Dubilier Condenser Corp., 289 U.S. 178, 188, 189, 53 S.Ct. 554, 558, 77 L.Ed. 1114, 1119 (1933), opinion amended in an immaterial respect, 289 U.S. 706, 53 S.Ct. 687, 77 L.Ed. 1462 (1933), the Court explained:
Recognition of the nature of the act of invention also defines the limits of the so-called shop right, which, shortly stated, is that, where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention. [citations omitted]. This is an application of equitable principles. Since the servant uses his master's time, facilities, and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business. But the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer has no part. This remains the property of him who conceived it, together with the right conferred by the patent, to exclude all others than the employer from the accruing benefits.
The proper question before us is not whether plaintiff was an employee of M & M/Mars, but whether he should be treated like one for the purpose of application of the shop right rule. Plaintiff was hired and paid by Spartan. It could presumably have terminated him as well. M & M/Mars could certainly have removed plaintiff from its plant, either because of dissatisfaction or because the need for his services no longer existed. Plaintiff worked on various projects for almost two and one-half years at the M & M/Mars plant on teams consisting principally of M & M/Mars employees and subject to the direction of an M & M/Mars supervisor.
Whether or not a person is dubbed an employee can have many consequences. It may involve workers' compensation, unemployment compensation, FICA and disability benefits, authority to bind to a contract, indemnification, or respondeat superior liability. The answer to the employment question properly varies with the varying consequences of the determination, and the public policies engaged. We note a growing modern tendency to engage temporary personnel from agencies, to borrow others' employees, to retain consultants, or to subcontract functions that once were satisfied by employees. *599 There may be only the temporary need for a specialist or a replacement, or a desire to avoid employee termination rights, pension contributions, insurance premiums, vacations, and other fringe benefits and other costs that accompany ordinary employment relationships. The point is that innovative variations on traditional employment relationships should not necessarily affect the consequences of the functional relationship between the parties.
The most significant factor triggering application of the shop right rule is the inventor's permitted use of paid time and plant personnel, materials and machinery to develop the invention. It is the plant's resulting contribution to the fruition of the inventive conception that equitably entitles it, not to ownership, but to shared use.
For those purposes, there was no distinction between plaintiff and a traditionally hired M & M/Mars employee. His authorized opportunity to use company resources to develop his invention was the same. M & M/Mars' contribution to the creation of a useful device was the same. We hold that its equitable share should therefore be the same.
Little attention has been directed to this problem in reported decisions in other jurisdictions. There is language in Neon Signal Devices v. Alpha-Claude Neon Corp., 54 F.2d 793 (W.D.Pa. 1931) which supports our holding. The real issue in that case, however, was the passage of a shop right to the successor of a business that validly had the right. An issue like ours was discussed in Q-Co Industries, Inc. v. Hoffman, 625 F. Supp. 608 (S.D.N.Y. 1985). There, a pivotal question was whether a copyrighted computer program was a "work made for hire," which is a work prepared by an employee within the scope of employment. 17 U.S.C.A. § 101(1). If it was, Q-Co was the author, and its copyright was valid. If not, then Q-Co's suit for infringement failed and the counterclaim of Dilip Som to part ownership prevailed. Q-Co did not employ *600 Som, but retained him as a part-time consultant to work on the software program, and, in that capacity, he helped to develop it.
The U.S. District Court disregarded Som's title as consultant, and focused on his functional relationship with Q-Co. He worked with a Q-Co employee on compensated time using company equipment and other resources, and in tandem with company personnel. The Court concluded that the relevant factors dictated that Som be treated as an employee and therefore that Q-Co's claim of authorship through employees was valid.
We similarly conclude that the employee-consultant-temporary-borrowed-servant cubbyholes are irrelevant to the application of the shop right rule. If the other conditions for a shop right are present, it exists, even though the inventor who develops his conception on company time with company materials and machinery and the help of company personnel has no employment contract with the company.
Affirmed.
There was a cross-appeal regarding M & M/Mars indemnification rights against Spartan. M & M/Mars seeks consideration of its cross-appeal only in the event of reversal of its summary judgment against plaintiff. The cross-appeal is therefore dismissed.