693 A.2d 494

GARRY L. CAPUTO D/B/A G.C. ASSOCIATES, PLAINTIFF–APPELLANT, v. NICE–PAK PRODUCTS, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 9, 1997—Decided April 22, 1997.

Before Judges SHEBELL, P.G. LEVY and BRAITHWAITE.

*David H.E. Bursik* argued the cause for appellant (*Bursik, Kuritsky & Giasullo*, attorneys; *Mr. Bursik*, on the brief).

*Richard D. Shapiro* argued the cause for respondent (*Hellring, Lindeman, Goldstein & Siegal*, attorneys; *Eric A. Savage*, of counsel; *Mr. Shapiro*, of counsel, and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

In November 1993, plaintiff filed a complaint in the Law Division against defendant, Nice–Pak Products, Inc., his former employer, alleging defendant failed to pay plaintiff the consideration orally promised for plaintiff's assignment of his invention of a process to install a re-sealable label flap for packaging a product sold by defendant. The complaint contained three counts: 1)

rescission of the contract of assignment, 2) recovery of patent royalties, and 3) unjust enrichment.

Defendant filed an answer denying plaintiff's allegations and, thereafter, moved for summary judgment. In March 1995, the judge dismissed the rescission count with prejudice for lack of subject matter jurisdiction, but denied defendant's motion as to counts two and three. In April 1996, defendant's second motion for summary judgment was denied. The case proceeded to trial before a jury; however, at the close of all evidence, a directed verdict was granted in defendant's favor on the remaining counts. Plaintiff appeals.

The facts reflect that in 1981 plaintiff began to work for defendant two days per week as an independent contractor. He was paid $1500 per month plus expenses. He worked on various packaging projects involving products sold by defendant.

In 1984, defendant began manufacturing a package of moist towelettes known as "Travel Pak." Defendant paid a royalty and used a Japanese firm's patent for the re-sealable flap. In 1987, defendant sought to avoid paying the royalty by devising its own technology. Defendant assigned the task to plaintiff, who began considering solutions for the problem.

In March 1987, plaintiff came up with an idea that led to the process of using a "corona treating" machine to selectively treat one zone on the top of the package so that the flap would be secured to the package at the treated zone, allowing the user to open the flap and then reseal it without the flap's coming off. According to plaintiff, the concept of corona treating by zone was his own new concept.

When plaintiff first proposed this method to defendant, defendant did not believe it would work, but plaintiff began experimenting. He built two of his own corona treatment machines, neither of which worked well enough. Therefore, defendant sent plaintiff and another employee to a Connecticut firm, Coretech, to have a more powerful treater machine built.

Plaintiff sent a letter to William Dwan, defendant's then senior vice president of technical services, enclosing a sketch of his invention and recommending defendant apply for patent protection. According to plaintiff, sometime in June 1987, Dwan agreed that defendant would pay for the technology to develop the process and that defendant would pay plaintiff a royalty of ten percent of the gross sales of the product.

In November 1987, plaintiff signed a written assignment of the invention to defendant, reciting a consideration "of One Dollar ($1.00) to us in hand paid by the said Assignee, and other good and valuable consideration." The assignment designated three "inventors" of the process, plaintiff, Dwan, and Saldarelli, each of whom executed the assignment. According to plaintiff, the recited consideration implicitly also included payment of the ten percent royalty promised to plaintiff in June 1987. Defendant submitted a patent application for the invention, which was ultimately granted.

In January 1989, before the patent was issued, defendant's president and owner fired plaintiff, stating that he did not need plaintiff's services anymore. He told plaintiff he had decided not to use plaintiff's invention. Plaintiff, later that year, heard the patent had issued. In 1993, while shopping in a supermarket, he discovered defendant had apparently incorporated his invention into the packaging of Travel Pak.

In July 1989, and again in November 1990, plaintiff sent defendant letters demanding he be paid royalties for his invention. The owner ignored the first letter, but called plaintiff after receiving the second letter and claimed that it was he, Dwan, and Saldarelli, who had invented the resealable flap. According to plaintiff, the owner subsequently called him and offered a settlement.

On behalf of defendant, Dwan testified that in 1989 he and plaintiff discussed the various available technologies, and that plaintiff suggested the possibility of treating the "stop area" on the package with an electrical discharge known as a corona treatment. Plaintiff proposed, and Dwan agreed, that plaintiff would attempt to develop the process in his home lab, where he

would attempt to build a corona treater. After plaintiff's first two efforts did not produce good results, Dwan said he authorized plaintiff to go to the Connecticut company to investigate the possibility of buying a more powerful machine. Plaintiff and another of defendant's employees made the trips at defendant's expense, resulting in defendant's eventual purchase of a corona treater from the Connecticut company.

According to Dwan, defendant incurred the expenses of developing the zone corona treatment process, with the exception of the initial testing done by plaintiff at home, and the process was the result of the work of plaintiff, Dwan, and Saldarelli.

Dwan said that, in the fall of 1987, plaintiff asked if he thought that defendant's owner "would pay him additional money for his work on the corona treatment project," to which he responded that he did not think so because plaintiff's work was part of his "consulting arrangement." Dwan denied ever promising to pay plaintiff a ten percent royalty for use of the zone corona treatment process.

Defendant began shipping the new Travel Pak, which incorporated the zone corona treatment process, in January 1990. According to defendant's senior products manager, the change had no marketing benefit and did not result in any change in sales of the product.

At the close of plaintiff's trial evidence, defendant moved for a directed verdict, arguing there was no evidence that there was a written contract obligating defendant to pay a royalty. Plaintiff's counsel wanted to present alternative claims: 1) breach of the contractual duty to pay a royalty, or 2) if there was no valid contract, the right to recover for unjust enrichment. Terming these to be "inconsistent claims," the judge directed plaintiff's counsel to choose between the two. After plaintiff chose to proceed under unjust enrichment, the judge denied defendant's motion for a directed verdict on the unjust enrichment claim, "because I have to take everything to his [plaintiff's] benefit." The next day, the judge elaborated on his ruling, stating that,

while plaintiff could plead alternative forms of relief, at trial he must choose between any forms of relief that were inconsistent. He explained that, given plaintiff's position that there was a failure of consideration, there could be no valid contract; thus, plaintiff was left with attempting to prove unjust enrichment. After hearing further oral argument on the sufficiency of the proofs as to unjust enrichment, the judge denied defendant's motion at that stage. However, at the close of all evidence, the judge granted defendant's motion for a directed verdict on the only remaining claim, unjust enrichment.

On appeal, plaintiff argues that the judge wrongly perceived that the two theories were factually inconsistent. He insists that the jury should have been asked to decide whether the written assignment was a valid contract that defendant breached. If the jury found that the contract was "a nullity or breached," because defendant never made the alleged oral promise, then "the jury could have turned to the issue of unjust enrichment."

A plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts. *R.* 4:5–6 ("As many separate claims or defenses as the party has may be stated regardless of their consistency and whether based on legal or on equitable grounds or on both"). At issue then is whether a plaintiff in a jury trial may be compelled to choose which cause of action is to be adjudicated by the jury.

We conclude that a plaintiff who has attempted to prove both breach of contract and unjust enrichment need not choose which one will go to the jury, as long as there is sufficient evidence as to both. Under proper instructions from the judge, the jury may decide which of the two was proved, and plaintiff will be able to recover under one of the theories. It is only recovery under inconsistent theories that is not permitted. We find no reason to forbid the submission of alternative theories to the jury in circumstances such as this. *See Cartel Capital Corp. v. Fireco,* 81 N.J. 548, 564, 410 A.2d 674 (1980); *See Farese v. McGarry,* 237 *N.J.Super.* 385, 389, 568 *A.*2d 89 (App.Div.1989). Plaintiff correct-

ly contended before the trial court that, if the jury found that there was no valid contract, the jury could then consider whether plaintiff nonetheless might recover for unjust enrichment, a cause of action that does not depend on there being an express contract. *See Power–Matics, Inc. v. Ligotti,* 79 *N.J.Super.* 294, 306, 191 *A.*2d 483 (App.Div.1963) (plaintiff may attempt to prove both unjust enrichment and breach of contract without also showing rescission of the alleged contract).

■ Here, the critical inquiry is whether plaintiff established a sufficient factual basis for submitting the contract claim to the jury. In this regard, we are convinced that plaintiff failed to establish his claim to a level of proof on which a reasonable jury might differ. *See Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995).

The standard to be applied is that the court must accept as true all evidence and reasonable inferences supporting the party opposing the motion; if reasonable minds could differ, the motion must be denied. Pressler, *Current N.J. Court Rules,* comment on *R.* 4:40–2 (1997). In determining whether reasonable minds could differ, the judge weighs the evidence, but only in order to decide whether the evidence presents a "significant disagreement," in which case the issue must be submitted to the jury; absent such a disagreement, the judge may decide that the evidence " 'is so one-sided that one party must prevail as a matter of law.' " *Brill, supra,* 142 *N.J.* at 536, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2511–12, 91 *L.Ed.*2d 202, 214 (1986)); *accord, Caputa v. Antiles,* 296 *N.J.Super.* 123, 133, 686 *A.*2d 356 (App.Div.1996).

The contract that plaintiff seeks to enforce relates to the agreement for the assignment of the invention. Plaintiff, Dwan, and Saldarelli, designated as the inventors or the "Assignors," assigned to defendant all their interests in the zone corona treatment process in return for the following consideration: "the sum of One Dollar ($1.00) to us in hand paid by the said Assignee [defendant], and other good and valuable consideration, the receipt

of all of which is hereby acknowledged." Plaintiff claims that the "other good and valuable consideration," at least as to him, consisted of Dwan's oral promise to pay a ten percent royalty. According to plaintiff, the receipt of this promise was the "good and valuable consideration" he acknowledged receiving.

Neither of the other inventors corroborated plaintiff's understanding, nor apparently made any claim to further consideration. Moreover, Dwan denied ever making such a promise, and denied having any discussion with plaintiff about the meaning of "good and valuable consideration." While Dwan's denial merely presented a credibility issue, many other circumstances detract significantly from plaintiff's claim. Not only was the alleged promise not reduced to writing, in his July 5, 1989 letter to defendant seeking compensation, plaintiff stated: "I *should be* entitled to ongoing royalties or a reasonable lump sum payment for my inventions." [emphasis added.] Had Dwan promised to pay a ten percent royalty, it is inconceivable that plaintiff would have used that language and not have mentioned the agreed royalty in his demand letter.

Further, plaintiff did not assert the promise in his 1993 complaint. Not only did plaintiff not demand enforcement of the consideration clause of the assignment, he sought to rescind the assignment because of an alleged failure of consideration. His present assertion that the oral promise *was* the consideration is inconsistent with his complaint. Even in his contract and his unjust enrichment counts, plaintiff failed to allege the promise. Plaintiff appears to have first asserted the promise in response to defendant's motion for summary judgment. In these circumstances, and considering the absence of any corroboration of plaintiff's own self-serving testimony, a reasonable jury could not have found for plaintiff based on a contract claim. *Brill, supra,* 142 *N.J.* at 535–36, 666 *A.*2d 146. We need not consider defendant's contention that the alleged royalty agreement would have been barred by the Statute of Frauds.

██ Plaintiff argues that the trial court erred in granting judgment to defendant on unjust enrichment. *See R.* 4:40–1. Recovery for unjust enrichment requires that plaintiff "show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 *N.J.* 539, 554, 641 *A.*2d 519 (1994). Plaintiff must prove "that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Ibid.* Because unjust enrichment is an equitable remedy resorted to only when there was no express contract providing for remuneration, a plaintiff may recover on one or the other theory, but not both. *Van Orman v. American Ins. Co.,* 680 *F.*2d 301, 311 (3rd Cir.1982) (applying New Jersey law); *Shapiro v. Solomon,* 42 *N.J.Super.* 377, 385, 126 *A.*2d 654 (App.Div.1956).

The judge held that dismissal of the unjust enrichment count was compelled by the "shop right" rule as applied in *Crowe v. M & M/Mars,* 242 *N.J.Super.* 592, 594–95, 577 *A.*2d 1278 (App.Div.), *certif. denied,* 122 *N.J.* 387, 585 *A.*2d 389 (1990). He interpreted the "shop right" rule to mean that, when a consultant invents something that he was hired to invent, the employer retains the non-exclusive right to use the invention, and the consultant may not recover compensation above his regular consultant fee.

The judge found that the evidence established the criteria for the "shop right" rule. He determined that plaintiff was hired to invent a new process for stopping the re-sealable flap, and that it was not a case where plaintiff invented something incidental to his main job. He then found that defendant had paid plaintiff his regular monthly fee, which fee was consideration for plaintiff's ideas, knowledge, experience, and performance in coming up with a viable process. Lastly, he concluded that "all of the expenses" of developing the invention were borne by defendant, including the trips to Connecticut, the patent costs, and the equipment costs.

Plaintiff contends that, unlike the inventor in *Crowe,* plaintiff's main job was not to invent the item in question; rather, plaintiff

worked on many projects throughout the years, and his prior involvement with the Travel Pak was "to re-locate the die cuts on the label flaps."

The record reveals that, beginning in 1981, plaintiff worked for defendant as a part-time independent contractor on various packaging projects. In 1987, defendant assigned him the job of designing an alternative way of stopping the re-sealable label on the Travel Pak, in order to avoid defendant's having to pay a royalty to a Japanese firm for the existing "die cut" method. One of plaintiff's own witnesses referred to the job as designing a new way of stopping the label, in order to avoid the royalty. Dwan characterized it as finding an "[a]lternate way to stop the labeling." According to plaintiff, he did propose changes in the configuration of the die cuts on the Travel Pak, but he kept thinking about alternative methods, resulting in his conceiving, at home and on his own time, of the zone corona treatment process.

The record allows no inference other than that defendant did direct plaintiff to devise a workable alternative. Thus, the trial judge correctly held that plaintiff was asked to do exactly what he was hired for, that is, to invent new and better ways of packaging. He properly concluded that plaintiff did "what he was hired to do" within the meaning of the "shop right" rule.

Next, plaintiff argues that the judge wrongly found that the corona treatment machine was what plaintiff *invented,* as the invention was, in fact, the zone corona treatment *process.* In support, plaintiff cites some ambiguous remarks by the judge during oral argument on the motion. However, a reading of the judge's oral opinion shows that he clearly understood that the invention was the process, not the machine.

Plaintiff also complains that the judge "chose to disbelieve and disregard the testimony and evidence of plaintiff that he developed the invention, built a prototype, refined the prototype and successfully tested his prototype invention at his own expense and in his own home." Plaintiff cites comments made by the judge during oral argument, such as the judge's response to counsel's statement

that, in building a prototype, plaintiff "spent his own materials, his own time and his own money." The judge responded: "Yeah. It was something he had. Right." The judge clearly was referring to plaintiff's undisputed testimony that he built the first corona treatment machine in his home with his own equipment purchased by himself.

In his oral opinion, the judge acknowledged that plaintiff did the initial work at home, but he accurately noted that the record established that the invention was developed only with the help of defendant, which contracted with a Connecticut firm to build a treater with the necessary power, and which paid all other expenses of development and patenting. The record does not support plaintiff's depiction of his role as paying for all stages of development. It was after plaintiff's two prototypes failed that defendant stepped in and arranged to have a more effective treater built. From that point on, by plaintiff's own admission, defendant absorbed all the costs, and Dwan confirmed that defendant paid the expenses of development.

The trial judge reasonably applied the "shop right" rule as a bar to plaintiff's unjust-enrichment claim. Plaintiff's job was to invent things that defendant asked him to, and he invented the zone corona treatment process with substantial and necessary help from defendant's personnel, equipment, and resources. While plaintiff complains that the key factual issues were disputed, and that the judge therefore should have submitted them to the jury, the evidence was so "one-sided" as to justify the judge's disposing of those issues as a matter of law. Given the state of the record, no reasonable jury could have found that plaintiff invented the process on his own, such as to entitle him to reimbursement for defendant's unjust enrichment. *Brill, supra,* 142 *N.J.* at 535–36, 666 *A.*2d 146.

The judgment is affirmed.