**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4881-18T4

PRIME TIME CONSTRUCTION,
LLC, FLORIO ENTERPRISES,
LIMITED LIABILITY COMPANY,
146-152 HAMILTON, LLC,
210-220 GOVERNOR, LLC and
169-183 16TH AVE, LLC,

 Plaintiffs-Respondents,

v.

VIMCO, INCORPORATED,

 Defendant-Appellant,

and

VIMCO, INCORPORATED,

 Third-Party Plaintiff-
 Appellant,

v.

MATTHEW FLORIO and
CHARLES FLORIO,

 Third-Party Defendants-
 Respondents,

and

VIMCO, INCORPORATED,

    Third-Party Plaintiff,

v.

BUILD LOGISTICS,
INCORPORATED, STEVEN
RUNFOLO and FRED
MAGALHAES,

    Third-Party Defendants.

_____

Submitted October 5, 2020 – Decided December 23, 2020

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2967-18.

Obermayer Rebmann Maxwell & Hippel LLP, attorneys for appellant (Maxwell A. Green and Joshua B. Kaplan, on the briefs).

Richard S. Mazawey, attorney for respondents and third-party defendants-respondents.

PER CURIAM

Defendant/third-party plaintiff Vimco Incorporated (Vimco) appeals from the June 11, 2019 orders of the Law Division denying its motion for summary judgment and granting summary judgment in favor of plaintiffs Prime Time

2

Construction, LLC (Prime), 169-183 16th Ave, LLC (16th Ave), 146-152 Hamilton, LLC (Hamilton), and 210-220 Governor, LLC (Governor), and third-party defendants Matthew Florio and Charles Florio.   We affirm.

I.

The following facts are derived from the record.  Prime was the general contractor for three construction projects in Paterson.  16th Ave, Hamilton, and Governor, are limited liability companies related to Prime that own the properties on which the projects are constructed.  The Florios are the principals of Prime, 16th Ave, Hamilton, and Governor.

Prime entered into subcontractor agreements with Build Logistics, Inc. (BL) to perform masonry and excavation work on the three projects.  BL, in turn, entered into a written contract with Vimco to provide materials for the Hamilton and Governor projects.  Two principals of BL signed a guarantee in favor of Vimco for the cost of the materials to be supplied to BL.  Neither Prime nor any of its related entities ordered materials directly from Vimco or entered into a contract with that entity.

Vimco provided BL with materials for the projects.  Vimco alleges that some of the materials were leased or subleased to BL and the remainder were sold to BL as consumables.  BL, in turn, invoiced Prime for the materials BL

received from Vimco. Prime and its affiliated entities paid BL $478,569.93 on the invoices. BL, however, failed to pay those funds to Vimco.

In October 2017, BL abandoned the three projects. On November 10, 2017, Prime terminated its contracts with BL.

On or about December 14, 2017, Vimco filed construction liens on the Hamilton and Governor projects for amounts it believed were due for materials it provided to BL. Prime thereafter filed two summary actions in the Chancery Division to discharge the construction liens. Hamilton is named as a plaintiff in one action; Governor is named as a plaintiff in the other. Vimco filed counterclaims against Prime, Hamilton, and Governor, alleging conversion and unjust enrichment.

The Chancery Division judge discharged Vimco's liens after concluding Prime and its related entities paid BL for all materials provided by Vimco. The court determined no contract existed between Prime or its related entities and Vimco and that it would be inequitable for Prime to pay twice for the materials. The court transferred Vimco's counterclaims to the Law Division.[1]

---

[1] In a separate action, Vimco obtained a default judgment against BL and its principals in the amount of $30,238.72 on the Hamilton project and $158,019.16 on the Governor project for unpaid invoices.

Approximately two weeks later, the parties conducted an inspection of the Hamilton and Governor projects to look for materials that Vimco alleges it rented to BL and should have been returned. According to Vimco, a Prime representative said his company would pay for any Vimco materials or property found on the project sites. Vimco representatives found no such materials or property on the two projects. Prime consented to Vimco's request to inspect the 16th Ave project, as well as two other Prime projects, at 203-205 12th Avenue and 207-217 12th Avenue, even though BL had not received materials from Vimco for those projects.

Although Vimco admitted that its materials would not have a marking, stencil, stamp, or label that would distinguish it from the materials of other suppliers, it identified what it believed to be its materials at the projects. Vimco recreated invoices and unsigned delivery tickets for the materials it alleges to have discovered and attempted unsuccessfully to collect on those invoices from Prime.[2]

---

[2] Notably, after Prime terminated its contracts with BL, it hired Macchiavello Construction (Macchiavello) as its subcontractor on the 16th Ave project. Macchiavello obtained materials from Vimco for that project. Unlike BL, Macchiavello fully paid for those materials from monies paid by Prime. Some materials Macchiavello purchased from Vimco were on site at the 16th Ave project during Vimco's February 28, 2018 inspection.

Vimco thereafter filed construction liens on the 16th Ave project and 207-212 12th Avenue projects based on the invoices it created after the site inspection. Prime and 16th Ave filed a third summary action in the Chancery Division to discharge those liens.[3] Vimco filed counterclaims against Prime, 16th Ave, and the Florios, alleging conversion, unjust enrichment, and violations of the New Jersey Prompt Pay Act, N.J.S.A. 2A:30A-1 to -2. Vimco alleged the Florios were personally liable because they directly participated in the torts of the entities in which they were principals.

The Chancery Division judge dismissed Vimco's liens, concluding it produced no evidence that Prime was in possession of any Vimco materials for which it had not paid BL or Macchiavello and that he was "satisfied that no Vimco property or material [was] on the 16th and 12th Avenue projects" from the BL era. The court found Vimco's evidence to be inaccurate and lacking in credibility and that the invoices had inconsistent dates, predated the inspection, and were identical to invoices issued to BL, which were paid by Prime. The court transferred Vimco's counterclaims to the Law Division.

---

[3] The third Chancery Division complaint also names Florio Enterprises, LLC (FE) as a plaintiff. FE is related to Prime and involved in its construction activities.

6

The three matters in the Law Division were consolidated. After discovery, the parties cross-moved for summary judgment.

On June 11, 2019, the trial court judge, who decided the Chancery Division matters discharging Vimco's liens, issued an oral opinion concluding there is no genuine issue of material fact that: (1) Prime and Vimco never entered into a contractual relationship; (2) Prime paid BL for all materials BL invoiced as having been received from Vimco before November 2017 when BL abandoned the projects; (3) Vimco produced no evidence that materials leased or subleased to BL were left at any of the project sites; (4) the Prompt Pay Act is inapplicable to Vimco's claims because no contract existed between Prime and Vimco; and (5) there is no basis on which to pierce the corporate veil to hold the Florios personally liable for Vimco's claims because they did not participate in a tort against Vimco. In reaching his decision, the judge incorporated his findings of fact and conclusions of law in the Chancery Division matters.

This appeal followed. Vimco makes the following arguments.

POINT I

THE TRIAL COURT IMPROPERLY GRANTED PRIME TIME'S MOTION FOR SUMMARY JUDGMENT BASED SOLELY ON IMPERMISSIBLE CREDIBILITY DETERMINATIONS.

A-4881-18T4

POINT II

THE TRIAL COURT'S ERRONEOUS CREDIBILITY DETERMINATIONS CAUSED IT TO IGNORE EVIDENCE PRESENTED BY VIMCO ESTABLISHING GENUINE ISSUES OF MATERIAL FACT, PRECLUDING SUMMARY JUDGMENT.

II.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quotations omitted).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan

Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (citations omitted). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995).

We have carefully reviewed the record in light of these legal principles and find no error in the trial court's summary judgment decisions. In the Chancery Division proceedings, the court found that Prime paid BL in full for every invoice it presented for materials BL bought from Vimco. Vimco implicitly acknowledges the accuracy of these findings, given that it bases its claims for payment from Prime not on unpaid invoices from BL, but on its assertion that representatives of Prime agreed to pay Vimco for any Vimco materials or property found on Prime's project sites during the February 28, 2018 inspection. The only plausible interpretation of such a promise, if made, is that Prime agreed to pay for any Vimco materials in its possession for which it had not already made payment to BL or Macchiavello, or which had been leased or subleased to BL and should be returned, as Vimco claimed. If Prime was

inclined to pay twice for the materials provided to BL it would not have contested Vimco's liens. Vimco produced no evidence of unpaid invoices for materials purchased by BL or Macchiavello. Nor did it produce any proof that it leased or subleased property to BL.

The self-serving affidavits of Vimco employees that they saw Vimco's property at the Prime projects is insufficient to create a genuine issue of material fact, given that Vimco admits that its property is not marked, stenciled, labeled, or otherwise identified as belonging to the company. Moreover, the trial court found, with ample support in the record, that the invoices Vimco produced for the materials it alleged were in Prime's possession were backdated, inconsistent, and included misleading "sold to" dates suggesting Prime purchased materials directly from Vimco. With respect to the materials Vimco alleged were leased or subleased to BL, Vimco produced no documentary evidence of a leasing agreement, and could not, in response to a question from the court, name the entity from which it allegedly leased the material for sublease to BL.

In light of the court's determination that Vimco did not create a genuine issue of fact with respect to Prime's possession of Vimco's materials or property for which payment was not made or which were leased or subleased and should be returned, the grant of summary judgment to Prime and its related entities on

10

Vimco's tort claims was warranted. "Conversion is the wrongful exercise of dominion and control over property owned by another inconsistent with the owner's rights." Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 454 (App. Div. 2009); LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009). Because the trial court properly granted summary judgment to Prime and its related entities on the conversion claim, there is no basis to impose individual liability on the Florios as principals of those entities who participate in a tort.

Unjust enrichment, the basis for equitable relief, requires a showing that a party received a benefit, the retention of which without payment, would be unjust. Caputo v. Nice-Pak Prods., Inc., 300 N.J. Super. 498, 507 (App. Div. 1997). In the context of a contractual relationship, the party claiming unjust enrichment must show that it expected remuneration from the other party at the time that it conferred the benefit and that the failure of remuneration enriched the other party beyond its contractual rights. VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Here, no contract existed between Prime or its related entities and Vimco. Prime's contract was with BL. It was through that contract that Prime paid for all of the materials BL received from Vimco. While Vimco has a justified expectation of payment from BL, it had no claim against Prime. Prime was not unjustly enriched. It received the materials for which it paid.

11

Finally, the trial court correctly concluded that the Prompt Pay Act does not apply here. The statute applies to either a prime contractor in a contractual relationship with a property owner, N.J.S.A. 2A:30A-2(a), or a subcontractor in a contractual relationship with a prime contractor or subcontractor, N.J.S.A. 2A:30A-2(b). The first provision does not apply because Vimco is a sub-subcontractor, not a prime contractor, and did not have a contractual relationship with the property owners. The second provision does not apply because Vimco did not have a contractual relationship with Prime, the general contractor, or its related entities that own the properties. Its contract was with BL. If it had a claim under the statute, it would have had to have been asserted against BL.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12