285 N.J. Super. 106 (1995)
666 A.2d 589
THE PRUDENTIAL STEWART REALTY, PLAINTIFF-APPELLANT,
v.
MICHAEL SONNENFELDT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1995.
Decided November 3, 1995.
*107 Before Judges STERN, KEEFE and HUMPHREYS.
Raphael G. Jacobs argued the cause for appellant (Jacobs and Bell, attorneys; Mr. Jacobs, on the brief and reply letter brief).
Richard F. Collier, Jr., argued the cause for respondent (Collier, Jacob & Mills, attorneys; Mr. Collier, of counsel; Robert J. Basil, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiff appeals from the grant of summary judgment dismissing its complaint.
Plaintiff broker filed this action against defendant with whom it had entered into an exclusive listing agreement for the sale of defendant's home. Plaintiff sought a commission based on breach of contract and damages for the breach of good faith and fair dealing implicit in the agreement.
*108 The agreement, entered on June 16, 1992, granted plaintiff an exclusive "right to sell" the single family home with the listing price of $2,395,000. It provided for a 7% commission. It further provided that "[i]n the event that the property ... is sold within 90 after the expiration of this Agreement to anyone to whom the Broker or the Broker's salesperson ... had introduced the property during the term of this Exclusive Listing, the commission as indicated above shall be earned by the Broker ... unless the Seller executes a new Exclusive Right to Sell Listing Agreement to take effect on expiration of this Agreement."
The Agreement was made "subject to [a] letter of 6/11/92," which modified the commission rates at different selling prices, established an advertising budget and strategies, and provided a "[t]erm of listing" of "[o]ne year with 6 month cancellation by either party." According to plaintiff's brief, the parties "understood this to mean that either party could cancel the agreement after six months from its inception." Defendant terminated the agreement by a letter of May 10, 1993 (confirming a prior oral notification), which was "[a]greed and [a]ccepted" by plaintiff's manager.
According to defendant, he started discussing a sale to the buyers on May 7, 1993, although the purchasers had previously been shown the house by defendant's personal assistant in April or May 1992, in March and April 1993, and again on May 5, 1993. Defendant entered into an agreement with them on May 13, 1992, selling the house for $2,075,000.
The motion judge granted summary judgment for defendant because the broker was not the "efficient producing cause" of the sale, and the contract did not require defendant to refer a prospective buyer to the broker during the contract term. The motion judge's entire opinion was as follows:
THE COURT: I'm satisfied that the case law requires that in order for the broker to be paid a commission, especially against the will of the buyer or seller, the broker must be the efficient producing cause of the sale in this case. I'm satisfied that there's no evidence here from which a fact finder could so conclude.

*109 Dr. Somberg (phonetic) was introduced to the house before the listing existed by entities entirely different from the broker. The broker concedes this. Dr. Somberg's negotiations with the Sonnenfeldts did not commence until after the listing was terminated.
The termination of the listing was done pursuant to the authority vested in Sonnenberg  Sonnenfeldt in the listing agreement and that was accepted by the Plaintiff.
Moreover, this is no obligation in this contract to refer. There may be some common law obligation to refer, but there's no obligation to refer in this contract. The contract was written by Prudential. The Court is going to construe any ambiguity or the absence of any affirmative obligation against the drafter of the contract.
For those reasons, I grant Summary Judgment in behalf of Sonnenfeldt and against Prudential.
The judge, thus, read the contract to require no commission because the termination occurred after six months and defendant sold to someone not introduced to the property by the broker during the term of the agreement.
We hold that the agreement, prepared on plaintiff's form but supplemented by a separate letter on plaintiff's letterhead and signed by its representatives, permitted precisely what happened in this case  termination of the agreement after a six-month period for purposes of a sale, without commission, to someone not procured nor introduced to the property by the broker. If the defendant could terminate for any reason during the second six month period, he certainly could have terminated because he found the buyer independent of the broker.
Plaintiff argues that defendant had an obligation of fair dealing to refer a potential buyer to the broker during the period of the exclusive brokerage agreement. Plaintiff also contends that the implied covenant of good faith and fair dealing prohibited defendant from cancelling the exclusive listing agreement during the contract period for the purpose of depriving plaintiff of a commission.
Under settled principles of law, there exists in every contract an implied covenant of good faith performance and fair dealing. Bak-A-Lum Corp. v. Alcoa Building Products, 69 N.J. *110 123, 129, 351 A.2d 349 (1976); 2 Restatement (Second) of Contracts § 205; Corbin on Contracts § 654A. The effect, if any, of the implied covenant on a party's exercise of a right to terminate a contract was recently dealt with at length in Sons of Thunder, Inc. v. Borden, Inc., 285 N.J. Super. 27, 666 A.2d 549 (App.Div. 1995). There, the majority concluded that the implied covenant of good faith performance and fair dealing does not prevent a party from terminating a contract in accordance with its express provisions, irrespective of the motive. The dissent concluded that the right to terminate a contract does not necessarily abrogate the implied covenant, "especially ... when the parties are in unequal bargaining positions, when there is justifiable reliance upon the continuation of the contract or when one party acts in a wrongful fashion." At 57.
None of these considerations of concern to the Sons of Thunder dissent are present here. Both parties were experienced in the real estate business. The non-terminating party drafted the contract which permitted termination after six months. Given the terms of the negotiated agreement, the motives of the terminating party are irrelevant. Karl's Sales and Service v. Gimbel Bros., Inc., 249 N.J. Super. 487, 495, 592 A.2d 647 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991).
Here, the contract language is clear. The agreement was expressly made "subject to [the] letter of 6/11/92."[1] The broker's investment in time and promotion of the property was protected for a period of six months, and by a promise that it would collect a commission upon a closing within ninety days of termination if defendant had introduced the buyer to the property. Furthermore, the facts do not indicate that defendant cancelled the agreement in an offensive way or in a manner not contemplated by *111 the agreement, and there is no suggestion of a justified reliance on any expectation that defendant would not exercise his right to cancel.
Given the undisputed facts, the implied covenant of good faith and fair dealing does not override the right of the defendant to terminate the contract, even under the dissent in Sons of Thunder.
In addition, this case is distinguishable from Kislak Company, Inc. v. Geldzahler, 210 N.J. Super. 255, 509 A.2d 320 (Law Div. 1985), in which the broker recovered its commission. There, the agreement expressly required the property owners to refer to the broker "all inquiries received regarding the purchase of said property whether from real estate brokers, prospective purchasers or others." Id. at 259, 509 A.2d 320. The referral requirement was deemed "an essential component of an exclusive agreement so much so that it has been found, of itself, to confer upon a broker the exclusive right to sell." Id. at 267, 509 A.2d 320. In Kislak, the owner not only breached the referral provision of the exclusive agreement, but also instructed the buyer "to wait to present the offer until after" the listing agreement expired "and did not inform Kislak of this inquiry or his contact." Id. at 260, 509 A.2d 320.
Here, as in Leadership Real Estate, Inc. v. Harper, 271 N.J. Super. 152, 638 A.2d 173 (Law Div. 1993), there was a post-termination clause which protected the broker. In Leadership, the agreement required payment of the commission "[i]n the event the property shall be sold ... within a period of 6 months after the expiration of this agreement to anyone that the listing or cooperating broker has shown said property and registered the name of such prospect...." Id. at 159, 638 A.2d 173. The broker showed the property to the ultimate purchaser, and was involved in numerous unsuccessful discussions regarding a purchase price. Id. at 161-65, 638 A.2d 173. However, the seller contacted the buyer about eight months later and commenced new discussions about terms of sale. Id. at 165, 184-85, 638 A.2d 173. By this time, the listing agreement had expired by only three or four *112 months. Id. at 159, 638 A.2d 173. Contracts were exchanged within the six-month period, but good faith negotiations were not consummated until thereafter. Id. at 165-67, 182-85, 638 A.2d 173. The Law Division held that while the activities of the broker "would be sufficient under the terms of the contract to permit it to earn a commission for sales made during the extension period," the broker was not the "efficient producing cause" of the sale permitting recovery thereafter. Id. at 181, 638 A.2d 173.
As in the Leadership case, where the issue was close, here it is clear that plaintiff was not the "efficient producing cause" of the sale. Nor did this plaintiff "introduce" the buyer to the property. Accordingly, we need not decide in this case whether a seller would be liable for a commission when the broker introduces the buyer to the property or is otherwise involved with the buyer during the term contained in the brokerage agreement, but the seller purposely waits beyond the post-termination period, be it ninety days or otherwise, to consummate the sale.
There appears to be a factual dispute as to defendant's reasons for terminating the exclusive listing agreement. For purposes of the summary judgment motion, we must assume, contrary to defendant's assertions in support of his motion, that he did so for the purpose of avoiding the terms of the brokerage agreement. We, nevertheless, affirm the grant of summary judgment because we do not consider the dispute as to motive to constitute a "material fact." See R. 4:46-2. We see no reason why our rationale in Sons of Thunder is inapplicable in this setting. The exclusive listing agreement did not expressly require defendant to refer prospective buyers to plaintiff during the contract term, while it permitted defendant to terminate the contract for any reason after six months. Defendant's motive to reduce the contract price by saving the commission expense was irrelevant. Sons of Thunder, supra, 285 N.J. Super. at 110, 666 A.2d at 591; Karl's Sales and Service, Inc., supra, 249 N.J. Super. at 495, 592 A.2d 647.
The judgment is affirmed.
NOTES
[1] The words "subject to [the] letter of 6/11/92" were written next to defendant's signature on the face of the listing agreement. The letter embodying the "[t]erm of listing" as "[o]ne year with 6 month cancellation by either party" was, as noted above, written by defendant's representatives on its letterhead.