753 A.2d 1251

LITA P. BIEDERMAN, PLAINTIFF, v. MITSUBISHI MOTORS CREDIT OF AMERICA, INC., DEFENDANT.

Superior Court of New Jersey
Law Division Bergen County

Decided March 14, 2000.

584

*Frank M. Ciuffani* for plaintiff Lita P. Biederman (*Wilentz, Goldman & Spitzer*).

*William E. Reifsteck* for defendant Mitsubishi Motors Credit of America, Inc. (*Capehart & Scatchard, P.A.*).

GUIDA, J.S.C.

This case arises out of an automobile lease signed between the parties on December 26, 1994. Lita P. Biederman (Plaintiff) leased a new 1995 Mitsubishi Eclipse for a term of forty-eight (48) months from defendant Mitsubishi Motors Credit of America, Inc. (MMCA). Section sixteen of the lease agreement provides as follows:

16. DEFAULT. I will be in default of this lease if:
 a. I fail to make any payment when due;
 b. I fail to comply with the insurance requirements of this Lease;
 c. Any information in my lease application (including driver information) is false or misleading;
 d. I assign any of my rights under this Lease or sublet the Vehicle;
 e. I become dissolved, become incompetent or die.

If I am in default, you may do any or all of the following without giving me advance notice, other than any notice which may be required by law:

(i) take any reasonable measures designed either to correct the default or to save yourself from loss in which case I will pay you immediately for the costs and expenses you have (for example, if my insurance should lapse or be canceled, you may buy the insurance for me and I will pay you the premium amount when you ask);

(ii) terminate this Lease and my rights to possess and use the Vehicle;

(iii) take possession of the Vehicle by any method or manner permitted by law;

(iv) declare due my termination liability as determined under Early Termination (paragraph 18), which I agree to pay immediately;

(v) apply my security deposit to any amounts I owe; and

(vi) pursue any other remedy permitted by law.

Additionally, paragraph seventeen of the lease provided, in part:

I UNDERSTAND THAT I MAY NOT ASSIGN, SUBLEASE OR TRANSFER ANY OF MY RIGHTS OR OBLIGATIONS UNDER THIS LEASE. ANY ASSIGNMENT, SUBLEASE OR TRANSFER BY ME WITHOUT YOUR PRIOR WRITTEN CONSENT WILL BE VOID.

In May of 1996, Plaintiff admittedly subleased her vehicle to another individual. It is unknown whether MMCA had knowledge of the sublease, but it was not canceled at that time. In January of 1998, MMCA canceled the lease and repossessed the vehicle for alleged non-payment of the November 1997 and December 1997 lease payments. Plaintiff alleges that MMCA failed to provide her or her sublessee with an opportunity to cure any alleged default and to reinstate the lease. Furthermore, although Plaintiff admits to receiving notice that the repossessed vehicle would be sold at public auction on February 19, 1998, she states that the notice did not provide the time or exact location of the auction. In fact, she alleges that the vehicle was not actually auctioned until March 20, 1998 and the sale did not occur until April 2, 1998. After repossession of the vehicle, MMCA notified all national credit agencies of the alleged default on the lease, and Plaintiff claims that this caused her credit rating to suffer.

Plaintiff subsequently brought the within action consisting of six counts against MMCA. Count one alleges that MMCA violated the New Jersey Consumer Protection and Leasing Act ("CPLA"), *N.J.S.A.* 56:12–6(a). Count two alleges that the same acts and/or

omissions giving rise to MMCA's violations of the CPLA also constitute violations of the Consumer Fraud Act ("CFA"), *N.J.S.A.* 56:8–1 through NJS 56:8–48. Count three alleges breach of contract. Count four alleges that MMCA breached its implied covenant of good faith and fair dealing. Count five alleges that MMCA was unjustly enriched. Count six alleges slander of credit.

MMCA originally moved for Summary Judgment on all counts of the complaint. Plaintiff then admitted that she had no valid claim pursuant to count one of her complaint since the lease in question was signed on December 24, 1994, six months prior to the effective date of the CPLA which was June 21, 1995. Accordingly, the Plaintiff brought a cross-motion to amend her complaint to delete the first count and opposed MMCA's motion as to counts two through six.

■ The second count of Plaintiff's complaint alleges that by failing to provide her with notice of default, opportunity to cure the default, and proper notice of sale, MMCA violated the CFA. In support of this contention, Plaintiff argues that even though the CPLA does not apply to this lease, the enactment of the CPLA by the legislature is evidence that the practices prohibited by the CPLA were considered to be unconscionable. Therefore, Plaintiff argues, since the CPLA had been in effect for nineteen months when Plaintiff's lease was canceled, MMCA was on notice that its acts and/or omissions were unconscionable, and therefore its conduct violated the CFA.

Conversely, MMCA argues that the Legislature expressly stated that the CPLA took effect on June 21, 1995, and therefore the act had no retroactive effect. MMCA argues that it acted entirely within its rights under the lease and that none of its actions violated the CFA.

■ As a general rule, New Jersey courts favor prospective application of statutes. *See Carnegie Bank v. Shalleck*, 256 *N.J.Super.* 23, 38, 606 *A.*2d 389 (App.Div.1992); *Kendall v. Snedeker*, 219 *N.J.Super.* 283, 530 *A.*2d 334 (App.Div.1987). Statutes

should not be given retrospective application when property rights are affected, absent an unequivocal expression of legislative intent that the statute should have that effect. *See Hart by Hart v. Fox,* 204 *N.J.Super.* 564, 499 *A.*2d 553 (Law Div.1985). Retroactive application is appropriate only when the legislature has so indicated, when the statute is ameliorative or curative, or where there are other compelling considerations which require retroactive application, such as where it would further the expectations of the parties. *See Ohlhoff v. Ohlhoff* 246 *N.J.Super.* 1, 586 *A.*2d 839 (App.Div.1991); *Small v. Department of Corrections* 243 *N.J.Super.* 439, 579 *A.*2d 1263 (App.Div.1990). Additionally, courts will examine whether retroactive application will result in manifest injustice or unconstitutionally interfere with vested rights. *See Palumbo v. Township of Old Bridge,* 243 *N.J.Super.* 142, 578 *A.*2d 1234 (App.Div.1990).

The CPLA defines a "Lease" as:

... a contract or other agreement between a lessor and lessee ... *entered into after the effective date of this act.... N.J.S.A.* 56:12–61. (emphasis added)

Additionally, the committee statement preceding the act states that:

This bill supplements the Consumer Fraud Act, and the Division of Consumer Affairs will enforce its provisions. *N.J.S.A.* 56:12–60, Assembly Commerce and Regulated Professionals Committee Statement.

The subject lease was entered into on December 26, 1994, approximately six months prior to the effective date of the CPLA. Other than Plaintiff's allegations regarding the CFA, there is no evidence before the court to suggest that any of the provisions of the lease were violative of any other statute or code,

The court recognizes that the provisions of the CFA are to be broadly applied in order to accomplish the Act's remedial purpose of routing out consumer fraud. *See Lemelledo v. Beneficial Management Corp. of America,* 150 *N.J.* 255, 696 *A.*2d 546 (1997). However, a clear reading of the CPLA and the aforementioned committee statement, leads to the inescapable conclusion that those acts set forth in the CPLA upon which Plaintiff relies would

only violate the CFA if committed by a party to a lease agreement executed after the effective date of the CPLA.

Further, in making it clear that the CPLA would not affect leases executed before its effective date, the Legislature acknowledged that not only were existing property rights being protected, but that parties who performed in good faith in accordance with agreements in effect prior to the CPLA would not be subject to the substantial penalties provided for in the CFA. The CFA provides, in part, that:

> Any person who violates any of the provisions of the act to which this act is a supplement shall in addition to any other penalty provided by law, be liable to a penalty of not more than $7,500.00 for the first offense and not more that $15,000.00 for the second and each subsequent offense. *N.J.S.A.* 56:8–13.

Additionally, any person who suffers injury as a result of a violation of the act may bring an action for damages. *N.J.S.A.* 56:8–19 provides:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

Fundamental fairness suggests that government give prior notice of a statute so that citizens may conform their behavior before its enhancement. *Twiss v. State, Dep't. of Treasury, Office of Financial Management,* 124 *N.J.* 461, 591 *A.*2d 913 (1991). For the reasons expressed herein, the court finds that the acts of MMCA complained of by Plaintiff were not violative of any of the provisions of the CFA as it existed prior to June 21, 1995, nor did they violate the CFA thereafter. Clearly, the rights and obligations of the parties were established upon the lease being executed, and were not affected merely because performance extended beyond the effective date of the CPLA. Accordingly, the Second Count of Plaintiff's complaint is dismissed.

The court having found that none of MMCA's acts were violative of any statute or law, and there being no other allegations of breach of contract by MMCA, the Third Count of Plaintiff's complaint alleging breach of contract is dismissed.

 The fourth count of Plaintiff's complaint alleges that MMCA violated the implied covenant of good-faith and fair dealing that is present in every contract. Plaintiff argues that by failing to provide her with notice of default, opportunity to cure the default and proper notice of sale, the Defendant deprived her of the benefits of her lease. However, the implied covenant of good faith and fair dealing does not foreclose the Defendant from exercising its rights under the lease upon default by the Plaintiff. As stated in *Prudential Stewart v. Sonnenfeldt*, 285 *N.J.Super.* 106, 666 *A*.2d 589 (App.Div.1995):

> The effect, if any, of the implied covenant on a party's exercise of a right to terminate a contract was recently dealt with at length in *Sons of Thunder, Inc. v. Borden, Inc.*, 285 *N.J.Super.* 27 [666 *A*.2d 549] (App.Div.1995). There the majority concluded that the implied covenant of good faith performance and fair dealing does not prevent a party from terminating a contract in accordance with its express provisions, irrespective of motive. *Id.* at 110 [666 *A*.2d 589].

Again, on the appeal of the *Sons of Thunder* case, the Supreme Court agreed with the Appellate Division, clearly stating that, "the implied covenant of good faith and fair dealing cannot override an express termination clause." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 *N.J.* 396, 419, 690 *A*.2d 575 (1997).

In the present matter, the terms of the lease were clear and expressly stated that upon default by Plaintiff, Defendant was entitled to terminate the lease and sell the vehicle without notice to Plaintiff. These clearly expressed clauses cannot be overridden by the implied covenant of good-faith and fair dealing. Accordingly, the Fourth Count of the complaint is dismissed.

 Plaintiff's fifth count alleges that MMCA was unjustly enriched by the forfeiture and sale. In order to prevail on this claim, the Plaintiff must prove that MMCA in fact received a benefit. *See VRG Corp. v. GKN Realty Corp.*, 135 *N.J.* 539, 641 *A*.2d 519 (1994) and *Cameco, Inc. v. Gedicke*, 299 *N.J.Super.* 203,

218, 690 *A.*2d 1051 (App.Div.1997), *affirmed, modified* and *remanded,* 157 *N.J.* 504, 724 *A.*2d 783 (1999). Plaintiff has offered no evidence in support of this allegation and as stated earlier in this opinion, she believed the benefit MMCA obtained resulted from an "unjust" termination of the lease. The Court finds that the only evidence on the issue of benefit is from MMCA in the form of an affidavit from its Supervisor of Customer Accounts Unit, which stated that after the sale of the vehicle, and after all credits were applied to the outstanding balance, there was a deficiency of $5,195.19. Defendant also produced as an exhibit a copy of the letter sent by it to Plaintiff detailing the balance owed, sale price, credits given, and total deficiency due and owing. Since the court finds that MMCA has in fact suffered a loss, Plaintiff may not recover for unjust enrichment. *See Associates Commercial Corp. v. Wallia,* 211 *N.J.Super.* 231, 511 *A.*2d 709 (App.Div.1986); *Van Orman v. American Ins. Co.,* 680 *F.*2d 301 (3d Cir.1982). Accordingly, the Fifth Count of Plaintiff's complaint is dismissed

The sixth and final count of the complaint alleges slander of credit. In order to prevail on a defamation claim, the Plaintiff must prove that there was a defamatory statement of fact concerning Plaintiff made by MMCA which was false. Also, this statement must have been communicated to a person or persons other than Plaintiff with actual knowledge by MMCA that the statement was false, or with reckless disregard of the statement's truth or falsity, or with negligence in failing to determine the falsity of the statement. *See* Restatement (Second) of Torts, Section 580B; *See Bainhauer v. Manoukian,* 215 *N.J.Super.* 9, 31–34, 42, 520 *A.*2d 1154 (App.Div.1987). Plaintiff has titled her cause of action as "slander of credit" and states that under *Henry v. Vacarro Const. Co. v. A.J. DePace, Inc.,* 137 *N.J.Super.* 512, 514, 349 *A.*2d 570 (Law Div.1975), she is required to show a "publication, or communication to a third person, of false statements concerning plaintiff, his property, or his business." *Id.* at 514, 349 *A.*2d 570.

Plaintiff argues that a genuine issue of material fact exists regarding the truth of MMCA's statements that Plaintiff defaulted on her lease. The Plaintiff claims that all payments on the lease were, in fact, made. However, Plaintiff bases her assertion solely "upon information and belief". There is no certification by Plaintiff or her sublessee that payments were actually made, and no proof of payment such as a canceled check has been provided. Conversely, MMCA submitted an affidavit by its Supervisor of Customer Accounts Unit which stated categorically that neither Plaintiff nor its sublessee had made any payments for the months of November and December 1997. The Plaintiff's statement of facts, and her allegations made upon information and belief, are not sufficient to create an issue of fact for the purposes of a Summary Judgment motion. *See* New Jersey Court Rule 4:46–5.

Plaintiff also argues that even assuming that the payments were not made, MMCA still submitted false reports to credit agencies because the information inaccurately described the events regarding the lease accounts, since MMCA had illegally declared the defaults and wrongfully obtained the canceled leases. The court finds this argument to be without merit, and has ruled herein that there has been no illegally-declared default or wrongfully obtained cancellations. Based on the uncontroverted proofs as to Plaintiff's failure to make timely payments, and based on the uncontroverted fact that Plaintiff subleased the vehicle in clear violation of the lease, this court finds that there is no genuine issue of material fact regarding the alleged falsity of MMCA's report of Plaintiff's default on the lease. Therefore, there is no basis for a slander of credit action. The Sixth Count of Plaintiff's complaint is accordingly dismissed.

For the foregoing reasons, Summary Judgment is granted in favor of MMCA, dismissing Plaintiff's complaint with prejudice. Plaintiff's cross-motion to amend her complaint is moot and therefore denied. Executed orders in accordance with this opinion are enclosed herewith.