748 A.2d 620 (2000)
329 N.J. Super. 528
ISLAND REALTY, Plaintiff-Appellant,
v.
Susan Decker BIBBO, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 2000.
Decided April 10, 2000.
*621 Robert E. Rue, Ship Bottom, for plaintiff-appellant (Shackleton, Hazeltine and Bishop, attorneys; Mr. Rue, on the brief).
David W. Field, Roseland, for defendant-respondent (Lowenstein Sandler, et al., attorneys; Mr. Field, on the brief).
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff appeals from the trial court's orders dismissing the complaint on defendant's motion for summary judgment and denying plaintiff's motion for reconsideration. The complaint alleged an entitlement to a real estate broker's commission based upon a six-month exclusive listing agreement between the parties. We affirm.
The basic facts are uncontroverted. The parties had entered into a "New Jersey Shore Multiple Listing Service Inc. Exclusive Right to Sell Listing Agreement" effective from May 13, 1998 to November 13, 1998, covering defendant's house in Loveladies. The listing price was $359,000. The agreement established a sales commission of six percent, and a rental commission of twelve percent. Thirty-day exclusions to the listing agreement were provided in respect of three specified individuals. The agreement also *622 provided for a sharing of the commission with other generating brokers.
On July 23, 1998, defendant orally communicated her decision to plaintiff to remove the house from the market. She confirmed that decision in writing the following day.
On July 27, plaintiff faxed to defendant an unsigned, illegible agreement of sale for the listing price from a purchaser who had been produced by another realtor. A legible version of that unsigned agreement was faxed to defendant the following day. The agreement of sale was not signed by the purchaser until July 29. The signed document was not received by defendant and she did not sign either document which she had received.
Based upon her decision to withdraw the house from the market, defendant did not consummate the sale, and she rejected plaintiff's demands for its commission for having produced a buyer. Plaintiff sued in five counts for the full commission called for by the listing agreement.[*] The first and third counts of the complaint sought the $21,540 sales commission alleged to be due based, respectively, on breach of contract and unjust enrichment grounds. The second and fifth counts sought punitive damages respectively for "malicious and intentional acts" and "misrepresentations [made] with a malicious and/or tortious intent[.]" The legal theory upon which the fourth count was based is unclear. It contained the following recital:
2. Defendant knew or should have known that upon entering into its contract with the Plaintiff, Plaintiff would rely upon the rights and responsibilities set forth in said contract and would expend time and money in marketing the subject property.
3. However, upon the production of a ready, willing and able buyer, seller refused to sell the subject property for that price previously agreed to in the contract referenced above.
That count also sought judgment for the $21,540 sales commission, on the basis of "injur[y] by the mispresentations made by defendant."
In a written statement attached to the dismissal order, Judge Ford expressed her reasons for granting defendant's motion for summary judgment and dismissing the complaint. The statement recited in part:
Mrs. Bibbo did not sign the agreement, since she felt she had removed the house from the market, and further, since she found the terms to be unacceptable; although the offer was for full price, the initial deposit of $1,000 and the additional deposit of $35,900 were not paid, and the offer had not been signed by the prospective purchaser....
The listing agreement does not address the issue of termination in the event that the seller, as is purported occurred here, has a change of heart. For purposes of this motion, however, I am assuming that the listing agreement was in effect and the question is whether or not the right to a commission, setting aside the enforceability of the agreement, ever occurred. It appears that it was within the prerogative of the seller to reject even a full price offer based upon unacceptable terms, in this case, the deficiency of the down payment, and the failure of the purchaser to follow through with the offer.
Therefore, there was not a ready, willing and able buyer making a bona fide offer, and thus the right to receive the commission never accrued. Since there is no factual dispute to be resolved, summary judgment is appropriate.
In denying plaintiff's motion for reconsideration, Judge Ford expressed her reasons in an oral opinion:
... I agree that somebody could make a full-price offer knowing that someone is *623 not going to accept it for whatever reason, and under this theory they could always guarantee themselves a source of income because to say that just as long as somebody offers the full price, then that triggers the commission. I don't think ... I agree.

* * *
What this is governed by is what was the agreement between the parties. And the agreement was that Island Realty would market the property for sale. I think that the ultimate decision about whether or not to accept a contract always resided with the seller of the property and no matter what the circumstances were, the decision about whether or not to sell the property was always reposed with the seller.
I don't think that by entering in a listing agreement that the seller intends to surrender that aspect of the ownership of the property because otherwise they would be, in effect, surrendering all of the decision making for the sale of the property. And I think that's something that goes with the incident of ownership of property that resides with the seller. What they are giving up is the right to market the property. And when there is a meeting of the minds in terms of a transaction and even if that transaction doesn't consummate in an actual sale, if there's a meeting of the minds and if the seller backed out of that, then there would be a right to some type of real estate commission. And I agree that Island Realty would then be entitled to the commission it would have realized on the transaction which in this case would have been approximately $10,000, not the full commission but the commission that they would have realized because they would have split it with the otherthey're the listing broker and there was a broker here that actually produced this potential customer. But for whatever reason, there was no meeting of the minds in terms of the terms and conditions of this contract. And there may be some question as to whether or not this particular [purchaser] rose to the level of being a ready, willing, and able [purchaser] and whether or not the terms were acceptable to the [seller].
But in any event, because of the seller's personal circumstances she decided to take this property off the market. And so long as she did not go to another agency and market it, if she was taking it off the market at that point in time, then I think that it is implicit within her agency agreement that she have the right to do that. This again doesn't do violence to the right of Island Realty to get a commission on a sale or where they produce a ready, willing, and able buyer. But here because there just wasn't a meeting of the minds and because a reasonable seller could disagree with certain terms and conditions of this contract, then I think that my initial decision was accurate and that the application for a commission is denied.
After reviewing the record and considering the written and oral arguments of the parties, we are in substantial agreement with both grounds of decision employed by Judge Ford. Plaintiff had made no adequate prima facie showing sufficient to satisfy the standards of Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995), that the putative purchaser was a ready, willing and able buyer who had made an offer conforming with the seller's reasonable requirements, i.e., proffering a deposit with the proposed agreement and otherwise "follow[ing] through with the offer." Furthermore, an owner of real property who has signed a listing agreement retains the right to withdraw the property from the market before a buyer is produced; subject, of course, to every contracting party's obligations to deal fairly and in good faith, see Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420-25, 690 A.2d 575 (1997) (noting that "every contract in New Jersey contains an implied covenant of good faith and fair dealing"). Classically in respect of a listing agreement, absent specific provisions to the contrary, the seller is liable for a commission if the property is sold to any non-excepted buyer during the listing *624 term or is sold after the listing term to any buyer generated by the contracting realtor before the listing term expired. See Prudential Stewart Realty v. Sonnenfeldt, 285 N.J.Super. 106, 111-12, 666 A.2d 589 (App.Div.1995), certif. denied, 143 N.J. 329, 670 A.2d 1069 (1996); see also Guber v. Peters, 149 N.J.Super. 138, 373 A.2d 431 (App.Div.1977). In general, the seller is liable for the commission where, during the listing term, the realtor was the "efficient producing cause" of an actual sale. Prudential Stewart Realty, supra, 285 N.J.Super. at 112, 666 A.2d 589.
Where the property has been withdrawn from the market before the broker's efforts have produced a buyer who stands ready to consummate the transaction, the owner is responsible to the broker only for such damages as may be established for breach of contract or on a quantum meruit basis for special services rendered in connection with reasonable efforts to sell the property, undertaken before it was withdrawn from the market. See Barry Norman Agency, Inc. v. Elias, 117 N.J.Super. 480, 484-85, 285 A.2d 80 (Law Div.1971). Ordinary services of a general nature rendered by the broker are not recoverable even on a quantum meruit basis; they are the cost of doing business. These principles are in keeping with the general rule that, in the absence of bad faith or special circumstances, the owner is not liable for the full commission unless a sale actually occurs. See Van Winkle & Liggett v. G.B.R. Fabrics, Inc., 103 N.J. 335, 347-49, 511 A.2d 124 (1986); Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551, 236 A.2d 843 (1967); see also Prestige Homes Real Estate Co. v. Hanson, 151 Or.App. 756, 951 P.2d 193, 195 (1997). Yet, it would be unjust to insulate the owner who listed a home from liability for distinct losses incurred by the broker in performing under the listing agreement.
Instead of seeking the full sales commission where no sale had occurred, plaintiff could have sought damages based on breach of contract or on quantum meruit. Even though one cannot prevail on both a contract claim and a quantum meruit (implied contract) claim covering the same services, our liberal approaches to pleading practice permit a party to seek relief on alternative grounds. See Caputo v. Nice-Pak Products, Inc., 300 N.J.Super. 498, 504, 693 A.2d 494 (App.Div.) (stating that, under the right circumstances, both theories may be pled, though only one may yield a recovery), certif. denied, 151 N.J. 463, 700 A.2d 876 (1997); Power-Matics, Inc. v. Ligotti, 79 N.J.Super. 294, 304, 191 A.2d 483 (App.Div.1963) (recognizing that both theories may be pled when the applicability of the express contract is debatable, as in cases where recision or voidness is alleged, or where the existence or enforceability of the express contract is a subject of contention). However, when questioned at oral argument before us on the subjects of quantum meruit and breach of contract damages, plaintiff expressly disavowed any interest in pursuing a claim other than for its full commission, notwithstanding that count four of the complaint, viewed with the customary liberality employed in construing the scope of pleadings, see R. 4:5-7; Velop, Inc. v. Kaplan, 301 N.J.Super. 32, 56, 693 A.2d 917 (App.Div.1997), could fairly be seen to encompass a quantum meruit claim in addition to the breach of contract cause of action pleaded in count one. We note, as well, that during the pendency of this matter plaintiff never asserted that it had incurred damages from defendant's alleged breach of contract apart from its loss of the full sales commission. See Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court...."). Thus, there was no basis for the entry of judgment for plaintiff and the complaint was correctly dismissed on summary judgment.
Affirmed.
NOTES
[*] The producing broker has made no claim against defendant for its share of the commission, and the prospective purchaser has not sought to force a sale of the home.