**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2418-18T2

WOODSTONE GROUP, LLC,

     Plaintiff-Respondent,

v.

PAUL TREACY and SARAH
TREACY,

     Defendants-Appellants.

_____

          Argued telephonically December 17, 2019 –
          Decided February 5, 2020

          Before Judges Yannotti and Firko.

          On appeal from the Superior Court of New Jersey, Law
          Division, Morris County, Docket No. L-0639-17.

          David M. Miller argued the cause for appellants (Miller
          and Miller, attorneys; David M. Miller, on the briefs).

          Michael Patrick Carroll argued the cause for respondent
          (Nish & Nish, attorneys; Robert J. Nish, on the brief).

PER CURIAM

Defendants Paul and Sarah Treacy appeal from a judgment entered by the Law Division on January 3, 2019, which awarded plaintiff Woodstone Group, LLC, $33,323.20 plus interest and costs, and dismissed defendants' counterclaims. We affirm.

I.

Plaintiff filed a complaint in the Law Division, alleging that in March 2012, the parties entered into a written contract, which required plaintiff to perform certain work at defendants' home, for a total of $158,100. Plaintiff claimed the parties amended the agreement to include additional work, at a cost of at least $8,188.40.

Plaintiff alleged that after it performed substantially all of the work, defendants terminated the contract "without cause" and refused to permit plaintiff to complete the project. Plaintiff claimed defendants failed to pay the amount due under the contract. Plaintiff asserted claims for breach of contract and quantum meruit. Plaintiff sought damages, interest, attorney's fees, and costs of suit.

Defendants filed an answer, affirmative defenses, and counterclaims. Defendants asserted claims for violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, common law fraud, breach of contract,

breach of the duty of good faith and fair dealing, breach of express and implied warranties, unjust enrichment, and negligence. Among other things, defendants alleged that plaintiff violated the CFA by failing to comply with regulations adopted pursuant to the CFA, which govern home improvement practices (the HIP regulations), N.J.A.C. 13:45A-16.1 to -16.2. Defendants also claimed that plaintiff performed certain work in a careless, negligent, or unprofessional manner.

The matter was tried before the Law Division judge, sitting without a jury. Plaintiff's principal Christopher J. Saul testified that on March 9, 2012, the parties entered into a written contract which required plaintiff to make certain improvements to defendants' home in accordance with plans prepared by defendant's architect, Jerry A. Bruno, Jr. The contract required plaintiff to remove a portion of the rear of the house, excavate and build a new foundation, and construct a new eat-in kitchen, pantry, bathroom, and deck.

Saul explained that the initial contract price was about $147,900, and the parties agreed to add "two other components," specifically an upgrade to the electrical system and placement of a stone veneer on the home's foundation. The total agreed-upon contract price was $158,100. The contract required

defendants to make an initial deposit of $29,580, four installment payments of $29,000, and a final payment of $2320 upon completion of the project.

Defendants also were required to pay for, among other things, permit fees, specialty lighting, and appliances. The contract stated that the project "should take approximately [three to four] months to complete" but the completion date could be affected by the weather, availability of supplies, and labor shortages. Defendants made the initial deposit of $29,580.

On March 22, 2012, the Township of Chatham's construction department approved the plans and issued a building permit for the project. Plaintiff began the work in April 2012, and defendants made the first installment payment of $29,000. The work continued and on June 14, 2012, defendants paid the second installment of $29,000. On July 23, 2012, defendants paid the third installment of $29,000. Mrs. Treacy asked Saul to adjust the wall in the kitchen area, and he agreed to make that change without any additional charge.

Saul testified that the fourth installment of $29,000 had been due after the second delivery of the cabinets. Defendants did not make that payment. Towards the end of August 2012, Mrs. Treacy left the United States for a vacation and was away for about two weeks. Saul said that during that time, plaintiff did not have access to the house and performed only a minimum amount

of the work. According to Saul, when Mrs. Treacy returned, she did not complain about the work. He again asked her to pay the $29,000 installment. Defendants did not make the payment.

Saul stated that, in September 2012, plaintiff only had certain "miscellaneous carpentry, trim and details" to complete. On September 7, 2012, Bruno inspected the work and, several days later, he provided plaintiff with a punch list of work to be completed. Saul testified that plaintiff completed most of the items on the list.

Saul stated that at this time, Mrs. Treacy asked plaintiff to complete the project without payment because she wanted to obtain a home equity line of credit to pay for the work. Saul denied the request. He said plaintiff could not work without getting paid. On September 18, 2012, Mr. Treacy gave Saul a check for $10,000.

In October 2012, Saul ordered replacement cabinets, at Mrs. Treacy's request, and plaintiff paid $2,283.44 for the new cabinets. Defendants did not pay plaintiff for the replacement cabinets. Saul stated that, in addition to the unpaid installments, plaintiff was seeking payment for the time lost while Mrs. Treacy was away, the building permits, and a window upgrade. Plaintiff's total claim was $42,166.44.

A-2418-18T2

On cross-examination, Saul acknowledged that during the summer of 2012, plaintiff removed the chimney and installed a pipe through the wall to vent the furnace and water heater. He also acknowledged that on October 18, 2012, a municipal official came to the property and issued a notice of violation, which stated that the chimney had been removed without a permit, a fire permit was required for venting the furnace, and the furnace and water heater were not vented properly. The notice also stated that the vent connector was too close to "combustibles."

Mrs. Treacy testified for defendants. She denied that defendants needed a home equity line of credit to pay plaintiff. She stated that after the municipal official issued the notice of violations in October 2012, she did not want plaintiff back at her home for safety reasons. She claimed that as a result of the improper venting of the furnace and water heater, defendants and their children were exposed to dangerous health conditions.

Mrs. Treacy asserted that plaintiff did not complete the work in a timely manner. She stated that plaintiff ordered the wrong-sized door, and defendants were forced to pay to correct deficiencies in the ventilation of the furnace and water heater. She said the plans did not require plaintiff to remove the existing chimney, and plaintiff failed to obtain the necessary permits for the work. Mrs.

A-2418-18T2

Treacy claimed the improper venting of the furnace and water heater made the home uninhabitable. She asserted that plaintiff never obtained written change orders and did not complete the plumbing work. She denied that her absence interfered with the work.

Mrs. Treacy further testified that she paid plaintiff an additional $5000 in cash, but she had no documentation to confirm the payment. She explained that defendants were seeking treble damages for the amount they spent to install a new furnace and new water heater with proper venting. Defendants also were seeking compensation for the amounts paid to replacement contractors to complete the work, and for the replacement cabinets. Defendants also were seeking counsel fees and costs.

Defendants presented testimony from Albert J. Oldroyd, Jr., who was qualified as an expert in the field of plumbing. He stated that a water heater can be vented through the chimney or directly out of the house through a wall, ceiling, or roof. He said that if he was going to change the venting of a water heater from a chimney, a permit was required. He opined that $1800 was a reasonable price to install a new direct-vent water heater, but this would depend on the work involved in the installation.

7

Bruno also testified for defendants. He stated that removal of the existing chimney was one option in his plans. He said that in September 2012, he prepared his punch list of work that remained to be completed. On cross-examination, Bruno acknowledged that, aside from the change in the cabinets, the items on the punch list were "cosmetic finishes." However, on redirect, Bruno stated that certain items on the list, such as the installation of the sink and dishwasher, and the relocation of a heating, ventilation and air conditioning (HVAC) duct, were not "cosmetic."

In addition, Gregory Impink, the Township's construction official, testified that he was familiar with the notice of violation that the Township's plumbing subcode official issued on October 18, 2012. Plaintiff did not file an appeal regarding the notice, and plaintiff never applied to the Township for a permit to remove the chimney. He also stated that a permit is required to remove a chimney; however, he acknowledged that sometimes the Township issues the permit after the contractor has completed the work.

Impink further testified that in March 2012, he reviewed the plans for the work at defendants' home, and they included an option for removal of the existing chimney. He stated that he issued a building permit for the project but the permit did not authorize plaintiff to remove the chimney, and the Township

never issued a permit for that work. He also said the Township's building code does not permit a furnace or water heater to be used if it is not properly vented.

Robert Rafter testified for defendants as an expert in HVAC. He stated that furnaces of the sort in defendants' home are usually vented through a chimney or a B-vent, which is a double-wall metal chimney. He recommended replacement of defendants' furnace with a high-efficiency, direct-vented furnace, because the furnace was old and it would be more cost effective to install a new, direct-vented furnace.

Rafter performed the work and charged defendants $3900. He did not obtain a permit because he believed the work was covered by the plumbing permit the Township previously issued.

In addition, Mr. Treacy testified that defendants did not make the fourth payment due under the contract because plaintiff did not complete the work. He told plaintiff to stop work on the project because of the dangerous condition in the home, which he claimed resulted from the improper venting of the furnace and water heater.

Mr. Treacy also stated that plaintiff did not install the cabinets correctly and they did not fit. He admitted that Mrs. Treacy had ordered a 48-inch range for the kitchen, when a 42-inch range was required.

A-2418-18T2

## II.

The trial judge filed a written opinion in which he concluded that defendants breached the contract because plaintiff substantially performed all of the work and defendants failed to pay all of the amounts due under the contract. The judge found that defendants' testimony that the work was deficient "was simply not believable." The judge stated that the alleged defects "were cosmetic at best."

The judge noted that defendants alleged that the removal of the chimney had created a dangerous condition in the home. The judge found, however, that the evidence presented at trial did not support that conclusion. The judge noted that the Township had issued the stop work order because plaintiff had removed the chimney without a permit.

The judge stated that the inspector who issued the violations never went inside the home, and Impink testified that the Township could issue a permit for the removal of a chimney after the work was completed. The judge noted that the plans Bruno prepared included an option for removal of the existing chimney, and the Township had approved the plans. The judge found that, under the circumstances, plaintiff should have appealed and challenged the Township's notice of violation.

The judge further found that after defendants removed plaintiff from the job, the additional work performed at the home was an upgrade from the work plaintiff had completed. The judge stated that defendants suffered no damages. Defendants paid for replacement cabinets, but plaintiff had already paid for the cabinets, and defendants should have sought a refund.

The judge also stated that Oldroyd "waffled" on the issue of direct, outside venting and that Oldroyd conceded he never personally inspected the premises. He also found that Mrs. Treacy did not make the necessary choices of appliances and other items, which would have allowed plaintiff to complete the job in a timely manner. The judge noted that Mrs. Treacy had ordered the wrong-size range.

In addition, the judge found that Mrs. Treacy "waffled" on the amount she spent for the appliances, and on her claim that she made an additional $5000 cash payment to plaintiff. The judge stated that Mrs. Treacy "equivocated about complaining to plaintiff about the delay." He found that Mrs. Treacy never gave plaintiff the opportunity to correct or cure the deficiencies.

The judge concluded that the evidence showed plaintiff completed the punch list items and it was entitled to be paid the amounts due under the contract. The judge rejected plaintiff's claim for lost work and awarded plaintiff

11

$33,323.20. In addition, the judge dismissed defendants' counterclaims, finding that the claims were lacking in merit.

The judge stated that defendants did not submit sufficient evidence to support their claims under the CFA. The judge found that plaintiff did not perpetrate a fraud on defendants. The judge also found that defendants were not harmed by any technical violations, if they existed, and that it would be inequitable to relieve defendants of their obligation to pay plaintiff for the completed work. The judge also decided that plaintiff was entitled to recover the amounts due under the doctrine of quantum meruit.

The judge memorialized his decision in a judgment dated January 3, 2019, which awarded plaintiff $33,323.20, plus interest and costs, and dismissed defendants' counterclaims with prejudice. Defendants' appeal followed.

III.

We turn first to defendants' argument that the trial judge erred by awarding plaintiff the amounts due under the contract. Defendants contend plaintiff failed to establish it substantially completed the work. Defendants claim plaintiff created a dangerous condition in the home when it removed the chimney and failed to properly vent the furnace and water heater.

Defendants also maintain that plaintiff was obligated to correct the venting of the furnace and water heater but failed to do so. Defendants claim they were required to hire a contractor to remedy the dangerous condition, and they spent "significant sums" in doing so. They therefore assert that plaintiff was not entitled to recover the entire amount due under the contract.

We note that factual findings "made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review . . . ." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (citing In re Trust Created by Agreement Dated Dec. 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)). We will not "disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Ibid. (quoting In re Trust, 194 N.J. at 284).

Our deference to the trial court's factual findings "is especially appropriate" where, as in this case, "the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). The trial court's decisions on issues of law are, however, subject to plenary review. Manalapan Realty, L.P. v. Twp. Comm. of

A-2418-18T2

Manalapan, 140 N.J. 366, 378 (1995). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid.

Generally, a builder who "substantially perform[s]" the contract is entitled "to recover the contract price less . . . a fair allowance to the owner to make good the defects . . . ." R. Krevolin & Co. v. Brown, 20 N.J. Super. 85, 89 (App. Div. 1952) (internal quotations omitted) (quoting Reese v. Kline Bldg. & Const. Co., 8 N.J. Misc. 296, 297 (1930)); see also Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 303 (App. Div. 1963). "Substantial performance is compliance in good faith with all important particulars of the contract." Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332, 337 (App. Div. 1956).

Here, defendants do not assert that plaintiff failed to perform the work required by the contract or the work identified on the punch list. They assert, however, that plaintiff removed the existing chimney without a permit and improperly installed a temporary venting mechanism for the furnace and water heater. It is undisputed that on October 18, 2012, the Township's inspector issued a notice of violation, which stated that the chimney had been removed without a permit, the existing furnace and water heater were not properly vented,

14                                                                      A-2418-18T2

the vent connector was too close to "combustibles," and a fire permit was required for venting the furnace.

Defendants contend plaintiff was obligated to correct the venting problem identified in the notice. They argue that "[n]othing prevented plaintiff from fulfilling its contractual obligation; it simply chose not to do so." The record shows, however, that defendants ordered plaintiff off the job and thereby prevented it from correcting the venting problem.

We conclude there is sufficient credible evidence to support the trial court's finding that plaintiff substantially completed the work required by the contract, and that plaintiff could not correct the deficiency in the venting of the furnace and water heater because defendants ordered plaintiff to stop working on the project. Thus, there is sufficient evidence in the record to support the trial court's decision to award plaintiff all the monies due under the contract.

IV.

We turn to defendants' contention that the trial court erred by denying them relief on their claim under the CFA. Defendants contend they established that plaintiff violated the CFA, and that they are entitled to damages for the ascertainable losses they sustained as result of the violations.

A-2418-18T2

"To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).

The CFA authorizes the Attorney General to promulgate certain rules and regulations, the violation of which "gives rise to a discrete category of CFA violations." Perez v. Professionally Green, LLC, 215 N.J. 388, 400 (2013) (citing N.J.S.A. 56:8-4; Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994)). Violations of the HIP regulations are deemed to be violations of the CFA. Allen v. V & A Bros., Inc., 208 N.J. 114, 129 (2011).

On appeal, defendants claim plaintiff did not comply with several HIP regulations. First, defendants assert plaintiff violated N.J.A.C. 13:45A-16.2(a)(7)(ii), which states it is unlawful to "[f]ail to . . . complete work on the date or within the time period specified in the home improvement contract . . . , unless the delay is for reason of labor stoppage; unavailability of supplies or materials, unavoidable casualties, or any other cause beyond the seller's control."

Defendants also assert plaintiff did not comply with N.J.A.C. 13:45A-16.2(a)(12), which requires that "all changes in the terms and conditions" of home improvement contracts be in writing and signed by all parties. In addition, defendants claim plaintiff violated N.J.A.C. 13:45A-16.2(a)(10)(i), which states that no home improvement contractor "shall commence work until [the contractor] is sure that all applicable state or local building and construction permits have been issued as required . . . ."

Plaintiff does not dispute that the HIP regulations apply to its contract with defendants. As stated previously, the contract provided that "[t]he project should take approximately [three to four] months to complete" but the completion date could be affected by the weather, availability of supplies, and labor shortages. Here, the Township issued the building permit in March 2012, and the work commenced around that time. Saul admitted the work was not completed within three or four months after the work began. Defendants failed to show, however, that they sustained any ascertainable loss due to the delay.

Moreover, Saul admitted the parties agreed to certain changes to the contract but did not execute any written change orders, as required by N.J.A.C. 13:45A-16.2(a)(12). It is undisputed, however, that plaintiff performed the

additional work. Defendants failed to show they sustained any ascertainable loss because the additional work was not confirmed in written change orders.

The record also shows that the Township inspector issued the notice of violation, in part, because plaintiff removed the existing chimney without obtaining a permit and failed to obtain a fire permit before it altered the ventilation for the furnace. Impink, acknowledged, however, that he had approved the architect's plans for the project, which included an option to remove the chimney.

Impink nevertheless stated that a permit was required for removal of the chimney but it was not uncommon for a contractor to obtain the permit after completing the work. It is undisputed that plaintiff did not obtain the permit to remove the chimney, or a fire permit for altering the ventilation for the furnace.

Even so, plaintiff may have had a reasonable basis for assuming that, because the Township had approved the plans and issued a permit for the work, it did not need a permit to remove the chimney or change the ventilation of the furnace. As noted previously, the trial court found that plaintiff should have contested the Township's notice of violations.

In any event, even if we assume that plaintiff violated N.J.A.C. 13:45A-16.2(a)(10)(i) by failing to obtain all necessary permits for the work, defendants

have not shown that they sustained an ascertainable loss causally related to the violation. <u>Zaman</u>, 219 N.J. at 222. Defendants apparently spent $5800 to install a new direct-vent furnace and water heater. However, plaintiff's failure to obtain the necessary permits before removing the chimney does not bear a "causal relationship" to the money defendants spent to install a new furnace and water heater.

Defendants assert that plaintiff created the venting problem by removing the chimney and installing the temporary venting system. As the trial court found, however, defendants never gave plaintiff an opportunity to correct and/or cure the alleged deficiencies created by the removal of the chimney.

Furthermore, defendants did not simply address the problem with the temporary ventilation. They installed a new furnace and water heater. Thus, defendants' expenditures were not causally related to plaintiff's failure to obtain permits for removal of the chimney and the change in the ventilation system.

We conclude the trial court did not err by dismissing defendant's CFA claims with prejudice. There is sufficient credible evidence in the record to support the court's finding that, even if plaintiff violated the HIP regulations, defendants failed to show they sustained an ascertainable loss causally related to the violations.

We note that defendants do not argue on appeal that the trial court erred by dismissing their other claims. Thus, any claim that the trial court erred in dismissing their claims is deemed to have been abandoned. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 155 n.2 (App. Div. 2005) (noting that an issue not briefed is deemed waived).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2418-18T2